Affirmed and Memorandum Opinion filed November 21, 2006














Affirmed and Memorandum Opinion filed November 21, 2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-05-00954-CV

____________

 

MARIA OLGA GARCIA, Appellant

 

V.

 

SELLERS BROS., INC., Appellee

 





 

On Appeal from the 215th
District Court

Harris County,
Texas

Trial Court Cause No. 04-36818

 





 

M E M O R A N D U M   O P I N I O N

In this premises liability case, appellant Maria Olga
Garcia appeals the summary judgment granted in favor of appellee Sellers Bros.,
Inc., the owner of a food store where Garcia claimed she was injured when she
slipped and fell in a puddle of liquid.  Garcia contends she raised
genuine issues of material fact on the elements of her premises liability
claim, and further contends that the trial court erred in disregarding her
evidence of spoliation.  We affirm.

 

Factual
and Procedural Background

Shortly after noon on April 27, 2004, while inside a retail
food store owned by Sellers, Garcia slipped in a large puddle of a liquid
cleaner she identified as APine-O-Pine.@  When Garcia
fell, her pants, shoes and shirt became wet with the liquid.  A few feet
away, a container of a liquid cleaner identified by Sellers as APinalen@ was discovered on
top of some boxes of liquid soap.  The 33-ounce container was about half
full and broken on the bottom.  According to Garcia, she saw the container
Aleaking from the
boxes.@  As a result
of the accident, Garcia suffered pain in her left shoulder.

In July 2005, Garcia sued Sellers for premises
liability.  After Garcia filed her second amended petition, Sellers moved
for a no-evidence summary judgment.  Garcia then amended her petition a
third time to include an allegation of spoliation of evidence because Sellers
did not retain the container of liquid cleaner.  

After Garcia filed her third amended petition, Sellers
amended its motion for summary judgment to assert both a no-evidence and a
traditional motion for summary judgment.  Garcia then filed a fourth amended
petition as well as a response to Sellers= amended motion
for summary judgment.  In the response, Garcia asserted an additional
basis for spoliation of evidence: she claimed that, shortly after the incident,
Sellers either knowingly or negligently removed a videotape from surveillance
cameras in the area where she fell. 

In its reply to Garcia=s response to its
amended motion for summary judgment, Sellers addressed both the substantive
claims and the spoliation claim based on Sellers= alleged failure
to retain the container; however, Sellers did not respond to the claim
concerning the videotape.  In Garcia=s fifth amended
petition, filed July 14, 2005, she added the same allegations she made in
response to Sellers= amended motion for summary judgment of
spoliation based on both the container and the videotape.  

On August 10, 2005, the trial court signed an order
granting Sellers= first amended motion for summary
judgment.  The trial court=s order stated in relevant part:

 

The Court noted
that after the defendant filed its first amended motion, the plaintiff filed
her fifth amended original petition.  The fifth amended original petition
adds a claim of spoliation of evidence.  The plaintiff asks for Aall relief allowed
for under the Rules regarding the defendant=s spoliation of
evidence, including but not limited to an appropriate instruction to the jury.@  . . . The
Court hereby disposes of the spoliation claim finding that no relief is
available as a matter of law in light of the fact that the Court finds the
defendant is entitled to judgment as a matter of law on plaintiff=s premises claim.

This
appeal followed. 

Analysis
of Garcia=s Issues

Below, Sellers claimed it was entitled to summary judgment
because Garcia had no evidence that (1) Sellers had actual or constructive
knowledge of the condition on its premises, (2) Sellers failed to exercise
reasonable care to reduce or eliminate the risk; and (3) its failure of care
proximately caused Garcia=s injury.  See CMH Homes, Inc. v.
Daenen, 15 S.W.3d 97, 99 (Tex.
2000).[1] 
Sellers also moved for traditional summary judgment on the element of actual or
constructive knowledge of the condition, relying on Garcia=s own testimony
that she did not know how the liquid got on the floor, who placed it on the
floor, or how long it had been on the floor before she stepped in it.  

 

In response, Garcia claimed that her testimony and that of
Sellers= employees raised a
fact issue on the first and second elements, because the amount of liquid on
the floor and the half-empty, damaged container of liquid provided temporal
evidence to show that Sellers should have discovered the puddle and failed to
exercise reasonable care to get rid of the spill.  Garcia pointed to her
deposition testimony concerning her injury to raise a fact issue on the third
element.  Finally, Garcia sought to avoid summary judgment by claiming
that Sellers spoliated evidence by (1) failing to preserve the container even
though it anticipated litigation the same day Garcia fell, and (2) knowingly or
negligently removing a surveillance videotape of the area where she fell
shortly after the incident.

On appeal, Garcia raises two issues:  (1) the trial court
erred in granting summary judgment because she presented competent summary
judgment evidence that created genuine issues of material fact on the elements
of her premises liability claim; and (2) the trial court erred by disregarding
her spoliation claim, which would have precluded summary judgment.  We
will address these issue in reverse order, beginning with Garcia=s spoliation
issue.  See Aguirre v. S. Tex. Blood and Tissue Ctr., 2 S.W.3d 454,
457 (Tex. App.CSan Antonio 1999, pet.
denied) (reviewing the trial court=s rejection of a
request for a spoliation presumption before applying summary judgment standard
of review). 

I.       
Spoliation of Evidence

A.     
Applicable Law and Standard of Review

Spoliation is the improper destruction of evidence, proof
of which may give rise to a presumption that the missing evidence would be
unfavorable to the spoliator.  Brumfield v. Exxon Corp., 63 S.W.3d
912, 919 n.3, 920 (Tex. App.CHouston [14th Dist.] 2002, pet.
denied).  To raise the spoliation issue, the party seeking the presumption
bears the burden of establishing that the alleged spoliator had a duty to
preserve the evidence in question.  Wal‑Mart Stores, Inc. v.
Johnson, 106 S.W.3d 718, 722 (Tex.
2003).  This duty to preserve evidence arises when a party knows or
reasonably should know that (1) there is a substantial chance that a claim will
be filed, and (2) evidence in its possession or control will be material and
relevant to that claim.  Id. 
When a party demonstrates an entitlement to a spoliation presumption, the
presumption precludes a court from granting a summary judgment.  Aguirre,
2 S.W.3d at 457.  A trial court=s denial of a
spoliation presumption is subject to an abuse of discretion standard of
review.  See Johnson, 106 S.W.3d at 723; Aguirre, 2 S.W.3d
at 457.

 

B.     
Garcia=s Spoliation Claim

Garcia alleges spoliation of evidence based on two alleged
actions:  (1) Sellers failed to produce the broken container of liquid
cleaner; and (2) Sellers negligently or intentionally removed a surveillance
camera videotape shortly after Garcia fell.  Because the trial court
disregarded Garcia=s request for a spoliation presumption and
granted Sellers= amended motion for summary judgment, we will
treat the trial court=s action as a denial of Garcia=s request, because
a presumption would have precluded summary judgment.  See Aguirre,
2 S.W.3d at 457. 

1.      
The Container of Liquid Cleaner

Garcia claims that Sellers failed to produce the broken
container of liquid cleaner, even though it anticipated litigation on April 27,
2004, the day she fell.  The failure to produce the container, Garcia
contends, deprived her of the opportunity to inspect and test the container to
determine how slowly the liquid dripped, how long it would have taken to
migrate to the area where Garcia fell, and the quantity of liquid on the
floor.  Garcia asserts that this evidence would tend to provide further
temporal proof in satisfaction of her burden to demonstrate that the puddle of
liquid was on the floor long enough to charge Sellers with constructive notice
of the spill.

Garcia supports her contention by pointing to Sellers= response to an
interrogatory requesting Sellers to state the date it first anticipated litigation
and to list the facts it relied on in support of its response.  Sellers
responded as follows:  ALate on April 27, 2004, Plaintiff=s spouse called
the store director, Tony Rodriguez, and wanted Tony to state that his wife had
fallen in the store and that after the conversation, the Plaintiff=s husband stated
he had recorded the conversation (without the consent of Tony Rodriguez).@  A Sellers= representative
also confirmed, in a deposition, that Sellers anticipated litigation late in
the day on April 27, 2004.  And, it is undisputed that the container was
not produced.

 

However, the testimony of Sellers= store manager,
Tony Rodriguez, who was working at the time of the accident, and Garcia herself
confirm that any duty Sellers had to preserve the container did not arise at
the time Garcia fell and a store employee cleaned up the spill. 
Consequently, by the time Sellers acknowledges it anticipated litigation Alate in the day@ on the 27th, the
evidence shows that Sellers had already disposed of the container.

Garcia contends she fell around 12:38 p.m. on the 27th, and
a report filled out by a Sellers= employee states
that the time of the incident was 12:36 p.m..  Rodriguez, the store
manager, testified that he first became aware of the incident when an employee
came up to him and told him that a lady had fallen down.  He immediately
went to the area, and when he arrived, Garcia was already standing up. 
When he asked Garcia if she was all right, she told him she was fine and walked
out of the store.  Garcia did not tell him what she believed made her fall
or that she had any arm pain.[2] 
Similarly, Garcia=s testimony confirmed that, after she got
up she Ajust left,@ even though
Rodriguez asked her to wait.  

Rodriguez testified that he called for a Sellers= employee, whose
only job was to clean the floors, and told him about the bottle of
Pinalen.  He personally instructed the employee to clean up the
liquid.  Rodriguez also testified that it was store policy to deal with a
leaking container by removing it and either sending it to a warehouse or
throwing it away.  

 

Garcia=s threshold burden, as the party seeking
the spoliation presumption, was to demonstrate that Sellers owed a duty to
preserve the container because it knew or reasonably should have known that
there was a substantial chance that a claim would be filed, and that the
container would be material and relevant to that claim.  See Johnson,
106 S.W.3d at 722.  The facts above do not demonstrate that, at the time
Garcia fell or when the spill was cleaned, Sellers was on notice that there was
a substantial chance Garcia would file a claim.  Sellers= acknowledgment
that it anticipated litigation the same day Garcia fell does not change this
result, because Sellers first anticipated litigation only after Garcia=s husband called
about Garcia=s fall Alate in the day.@[3]  It was Mr.
Garcia=s telephone call,
not the circumstances surrounding Garcia=s fall, that
Sellers admitted put it on notice, and this was well after Garcia had left the
storeCwithout making any
complaint of injuryCand the spill was cleaned up. 
Although the evidence does not show that the container was, in fact, thrown
away at the time the spill was cleaned up, store policy was that a leaking
container was to be taken to a warehouse or thrown away, and there is no
evidence the container was disposed of after Garcia=s husband called
Rodriguez.  Therefore, as to this part of Garcia=s spoliation
claim, she has failed to show that she was entitled to a spoliation
presumption.  See Johnson, 106 S.W.3d at 721B22.

2.      
The Videotape

Concerning the videotape, Garcia propounded a request for
production on Sellers seeking a Atrue and correct
copy of the video surveillance taken by cameras 2 and 8 from 12:30:00 a.m. to
1:38:00 p.m.@ on the date of the incident.  Sellers answered
as follows:  AThere is none.  The tape was taken
out at 12:38.@  According to Garcia, this answer reflects that
Sellers either negligently or intentionally removed the videotape Afrom the only two
store cameras that caught Garcia=s fall@ within seconds of
her fall, and therefore demonstrates that Sellers spoliated evidence and it
offered only a Anebulous excuse for the missing videotape.@ 

 

However, it is unclear from the request for production
whether Garcia was requesting videotapes that ran for that specific period of
time only, or whether she sought videotapes that included images recorded
within that time frame; thus, we cannot determine whether Sellers= response was
inadequate.  It is also unclear whether the tape referred to in Sellers= response (the one
that was Ataken out@) was ever sought
or could have been produced.  The substance of Garcia=s spoliation claim
also is unclear, because her primary complaint appears to be that Sellers
either negligently or knowingly ceased taping after the incident, not
that Sellers destroyed or failed to produce any videotapes of the period before
she fell.  Moreover, nothing in the record supports Garcia=s specific claim
that Acameras 2 and 8@ are Athe only two
cameras that show Garcia=s fall.@  Nor does
the record support Garcia=s claim that the tape was removed Amere seconds after
the fall,@ because the response does not specify whether the
tape was removed at 12:38 a.m. or 12:38 p.m.  Therefore, Garcia did not
satisfy her burden to demonstrate she was entitled to a spoliation presumption
on the basis of the videotape.  See id.

On this record, we hold that the trial court did not abuse
its discretion in denying Garcia=s spoliation
claim. 

2.      
Sellers was Entitled to Summary Judgment as a Matter of Law

A.     
Standards of Review

After adequate time for discovery, a party may move for summary
judgment on the ground that there is no evidence of one or more essential
elements of a claim or defense on which an adverse party would have the burden
of proof at trial.  Tex. R. Civ. P.
166a(i).  A no evidence summary judgment is improper if the non‑movant
presents more than a scintilla of probative evidence to raise a genuine issue
of material fact.  Forbes, Inc. v. Granada Biosciences, Inc., 124
S.W.3d 167, 172 (Tex.
2003).  More than a scintilla of evidence exists if it would allow
reasonable and fair‑minded individuals to differ in their
conclusions.  Id. 
Less than a scintilla of evidence exists when the evidence is so weak as to do
no more than create a mere surmise or suspicion of fact.  Id. When
determining if more than a scintilla of evidence has been produced in response
to a Rule 166a(i) motion for summary judgment, the evidence must be viewed in
the light most favorable to the non‑movant.  See Morgan v.
Anthony, 27 S.W.3d 928, 929 (Tex.
2000).

 

The movant for traditional summary judgment must show that
there is no genuine issue of material fact and that it is entitled to judgment
as a matter of law.  Tex. R. Civ.
P. 166a(c); Nixon v. Mr. Property Management Co., Inc., 690
S.W.2d 546, 548 (Tex.
1985).  A defendant moving for traditional summary judgment must
conclusively negate at least one essential element of each of the plaintiff=s causes of action
or conclusively establish each element of an affirmative defense.  Sci.
Spectrum, Inc. v. Martinez, 941 S.W.2d 910,
911 (Tex.
1997).  Evidence is conclusive only if reasonable people could not differ
in their conclusions.  City of Keller v.
Wilson, 168 S.W.3d 802, 816 (Tex. 2005).  Once
the movant establishes its right to summary judgment as a matter of law, the
burden shifts to the non-movant to present evidence raising a genuine issue of
material fact, thereby precluding summary judgment.  City of Houston v. Clear Creek Basin
Auth., 589 S.W.2d 671, 678B79 (Tex.
1979). When reviewing a traditional summary judgment, we take as true all
evidence favorable to the non-movant, and we indulge every reasonable inference
and resolve any doubts in the non-movant=s favor. 
Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004).

B.     
Sellers was Entitled to Summary Judgment

As noted above, Sellers sought a no-evidence summary
judgment on three elements of a premises liability claim, and a traditional
summary judgment on Sellers= actual or constructive knowledge of the
conditionCin this case the puddle of liquid cleanerCon the
premises.  See Daenen, 15 S.W.3d at 99.  Garcia
contends she produced evidence to raise a fact issue on the elements of her
claim, and the trial court erred by failing to accept her evidence as true and
to resolve every reasonable inference in her favor.  We disagree.

 

Garcia was Sellers= invitee, and as
such, Sellers owed her a duty to exercise reasonable care to protect her from
dangerous conditions in its store that were known or reasonably
discoverable.  See Wal-Mart Stores, Inc. v. Reece, 81 S.W.3d 812,
814 (Tex. 2002); Wal-Mart Stores, Inc. v.
Gonzalez, 968 S.W.2d 934, 936 (Tex.
1998).  However, this duty does not make Sellers an insurer of Garcia=s safety.  See
Gonzalez, 968 S.W.2d at 936.  To demonstrate actual or constructive
knowledge of a condition on the premises, a plaintiff must establish that (1)
the defendant placed the substance on the floor, (2) the defendant actually
knew that the substance was on the floor, or (3) it is more likely than not
that the condition existed long enough to give the premises owner a reasonable
opportunity to discover it.  Reece, 81 S.W.3d at 814.  Here,
the issue is whether the spill had been on the floor for a sufficient time to
give Sellers a reasonable opportunity to discover it.  See id.

The rule requiring proof that a dangerous condition existed
for some length of time before a premises owner may be charged with
constructive notice is firmly rooted in our jurisprudence.  Id. at 815. 
Commonly known as the Atime-notice rule,@ it is based on
the premise that temporal evidence best indicates whether the owner had a
reasonable opportunity to discover and remedy a dangerous condition.  Id. at 816.  Without some temporal evidence, there
is no basis upon which the fact finder can reasonably assess the opportunity
the premises owner had to discover the dangerous condition.  Id.

Garcia=s deposition testimony revealed that she
had no evidence of how the liquid got on the floor or how long it had been on
the floor before she stepped in it.  She also testified that she saw the
partially empty, broken and dripping container of liquid cleaner only after she
fell, and she had no evidence of who placed it on the nearby boxes or how long
it had been there.  Moreover, she had no evidence that Sellers knew the
container was there or  who put the container there or that Sellers knew
the bottle was leaking before she fell.

 

Garcia contends, however, that the large size of the puddle
and the broken container found nearby created a genuine issue of material fact
on Sellers= constructive knowledge of that condition on its
premises, because it is some evidence of the origin of the hazard and the
length of time it existed before Garcia stepped in it.  But the size of
the puddle, without more, is no evidence of the length of time the spill had
been on the floor.  And, assuming the liquid on the floor came from the
broken container leaking nearby, Garcia testified she did not see the container
until after she fell.  No inference can be made from this testimony about
the length of time the spill was on the floor.  In the absence of any
other evidence, therefore, Garcia=s slight
circumstantial evidence amounts to no more than a scintilla and is insufficient
to raise a genuine issue of material fact.  See Reece, 81 S.W.3d at
816B17 (holding that
evidence of employee=s proximity to spill, without more, was no
evidence of premises owner=s constructive notice of spill); Gonzalez,
968 S.W.2d at 938 (holding evidence of dirty macaroni salad on floor and subjective
testimony that it Aseemed like it had been there awhile@ was no evidence
to support conclusion that premises owner had constructive knowledge of
dangerous condition).

Garcia argues that her facts are similar to those in Wal-Mar
Stores, Inc. v. Tinsley, 998 S.W.2d 664 (Tex. App.CTexarkana 1999, pet. denied), in which the appellate court
found that the circumstantial evidence presented was sufficient to establish
that Wal‑Mart had constructive notice of a puddle of water on its
floor.  Garcia contends that, as in Tinsley, she testified that she
located the origin of the dripping liquid, the puddle was large, and her
clothes became wet as a result of the fall.  However, a review of the
facts shows Tinsley stands in stark contrast to this case and does not
support Garcia=s claim.  

In Tinsley, the plaintiff slipped and fell in a
puddle of water.  Id.
at 667.  She testified that after her fall, she noticed big circles and
yellow stains on the ceiling tiles, and she stated that it looked like water
had dripped through the tiles and then dried.  Id. at 668.  She stated
the puddle was large, such that when she fell, probably three quarters of her
body was lying in water, and her clothes became wet.  Id.  She also said she had seen
water dripping into buckets from ceiling tiles in other locations of the store
on several prior occasions.  Id. 
A Wal‑Mart manager testified that she had, on several occasions, placed
buckets to catch water leaking from the ceiling due to condensation from the
air‑conditioning system.  Id. 
She also testified that the size of a puddle of water on the floor would vary
depending on how long it took an employee to discover it.  Id.  There
was additional testimony that water dripped through the ceiling tiles due to
air‑conditioning problems, and when the tiles became soaked with water,
employees would take down the tiles so they would not fall on a customer. 
Id. at
668B69.

 

Here, no remotely comparable evidence exists that would
tend to show that the puddle of liquid cleaner had been on the floor a
sufficient length of time to charge Sellers with constructive knowledge of its
presence.  Again, assuming the liquid came from the broken container
nearby, there is no evidence of who placed the container on the boxes or how
long it had been there, and no evidence Sellers knew who put the container
there or if Sellers knew the container was leaking before Garcia fell. 
And, unlike Tinsley, there is no testimony that raises a fact issue on
the Atime-notice rule.@  

Thus, considering the evidence in the light most favorable
to Garcia, the size of the spill and Garcia=s observation,
after she fell, of the broken container nearby, are no evidence to raise a fact
issue as to whether Sellers had constructive notice of the dangerous
condition.  Because we hold Garcia produced no evidence to support the
element of constructive knowledge of the condition on the premises, we do not
reach the remaining elements.  We overrule Garcia=s first issue.

Conclusion

We overrule Garcia=s two issues and affirm
the trial court=s judgment.

 

 

 

 

/s/     
Wanda McKee Fowler

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed November 21, 2006.

Panel consists of
Justices Fowler, Edelman, and Frost.














[1]  Sellers did not seek summary judgment on the
one additional element of a premises liability claim, that Athe condition posed an unreasonable risk of harm.@  See Daenen, 15 S.W.3d at 99.





[2]  Rodriguez also testified that he never came to
believe that Garcia was ever going to make a claim for her medical bills, and
he never formulated an opinion that she was going to make a claim at all. 
He thought that she Alooked fine.@ 





[3]  In an affidavit, Mr. Garcia averred that Tony
Rodriguez, the store manager, acknowledged that he was aware of the incident
and told him that a report had been made.  Mr. Garcia further stated that
Rodriguez told him to call ARoss@ with Sellers, and Ross told Garcia to call David
Guerrero, who Awas the claims adjuster who was investigating [Mrs.
Garcia=s] fall.@ 
Mr. Garcia told Guerrero that Mrs. Garcia was going to the doctor because of
her fall, and Guerrero told him to keep the medical bills and he would Atake care of them.@