# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01043-COA

PETER J. PATRICOLA, ADMINISTRATOR OF THE ESTATE OF LANITIA PATRICOLA                                      APPELLANT

v.

IMPERIAL PALACE OF MISSISSIPPI, LLC D/B/A IMPERIAL PALACE CASINO, RESORT & SPA                                      APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 06/24/2016 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | CATHERINE H. JACOBS |
| ATTORNEY FOR APPELLEE: | PATRICK R. BUCHANAN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED: 08/08/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE IRVING, P.J., FAIR AND GREENLEE, JJ.

### FAIR, J., FOR THE COURT:

¶1.     Lanitia Patricola slipped and fell on a small puddle in the lobby of the Imperial Palace Casino in Biloxi, Mississippi.  Patricola alleged that the puddle was created by condensation dripping from an air conditioning vent overhead; she testified that the ceiling around it was stained and that there were drops of water still hanging from the vent immediately after her fall.  The trial court granted summary judgment against her based on its conclusions that Patricola[1] had failed to show condensation created the puddle or that Imperial Palace had

---

[1] Patricola died from unrelated causes during the pendency of the suit, and her estate was substituted as a party.  For convenience, we will refer to the estate as "Patricola."

notice of the puddle's existence. But, on summary judgment, Patricola must be given the benefit of every inference that can reasonably be drawn from the evidence. After our de novo review of the record, we disagree with the circuit court on both points. We reverse the grant of summary judgment and remand the case for trial.

## DISCUSSION

¶2. The record evidence consists of the depositions of Patricola, her husband, two employees of Imperial Palace, an incident report created the day of the accident, and several photographs of the vent in question taken by Patricola and her husband several weeks after her fall.

¶3. Patricola and her husband essentially testified to the same things – that, on September 14, 2007, they ate breakfast at the casino. As they were leaving, Patricola slipped on a small puddle of water. The puddle was located at the junction between the casino itself, which was a barge, and the land-based entrance. At the junction, the floor transitioned from carpet to marble tile; the puddle was on the marble. Patricola slipped and fell as she was stepping from the carpet to the tile.

¶4. Above the puddle was a long, narrow vent,[2] which at the time was carrying cold air from the air conditioning system. The vent had visible condensation on it, and the ceiling around the vent was stained by water damage. The Patricolas admitted that they did not

---

[2] Patricola herself thought this was the seam between the building and the barge, but other testimony established that it was a "linear diffuser," a long, narrow vent from which chilled or heated air flowed into the room.

2

actually see drops of water falling from the vent onto the floor. Both testified that they returned to the lobby several weeks later and photographed the vent, where they again found visible condensation.[3] Patricola's husband testified that he also saw water on the floor on that second visit.

¶5. Employees of the Imperial Palace admitted that condensation sometimes formed on the vents in the lobby, though they had no specific recollection of the particular vent in question. One employee admitted that condensation formed on the vents "every now and then" and that he cleaned it from the floor and vents, apparently routinely. He had a specific tool he used for cleaning condensation from the vents, which were about twelve feet above the floor. The employee added that cleaning condensation from the floor alone would not fix the problem, as it would continue to drip from the vents if it was not removed. Another employee admitted that water condensed on the air vents in the lobby when outdoor temperatures and humidity were high, because of the influx of air from outside, though he denied that it was a regular problem.

¶6. An incident report prepared by Imperial Palace employees on the day of Patricola's fall stated that one of the employees "observed a small amount of condensation leaking from the ceiling onto the carpet."

¶7. Turning to the law of premises liability, there is no dispute that Patricola was a

---

[3] As they appear in the record, the photographs are of rather poor quality, and there is a dispute as to whether they support the Patricolas' description of the vent. Regardless, their testimony must be taken as true for summary judgment purposes.

business invitee. *See Grammar v. Dollar*, 911 So. 2d 619, 624 (¶12) (Miss. Ct. App. 2005) (defining business invitee as "someone who enters onto another's premises at the invitation of the owner for the purpose of benefitting both parties"). The owner of a business is not required to insure against all injuries, even for an invitee; instead, he "owes a duty to an invitee to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition or [to] warn of dangerous conditions not readily apparent, which the owner or occupant knows of, or should know of, in the exercise of reasonable care." *Robinson v. Ratliff*, 757 So. 2d 1098, 1101-02 (¶12) (Miss. Ct. App. 2000). The owner has no duty to warn of a defect or danger that is as well known to the invitee as to the owner, of dangers that are known to the invitee, or of dangers that are obvious or should be obvious to the invitee in the exercise of ordinary care. *Grammar*, 911 So. 2d at 624 (¶12).

¶8. "We employ a de novo standard of review of a trial court's grant or denial of summary judgment and examine all the evidentiary matters before it . . . ." *Davis v. Hoss*, 869 So. 2d 397, 401 (¶10) (Miss. 2004). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c).

¶9. Patricola must prove either (1) that Imperial Palace's negligence injured her, (2) that it had knowledge of the dangerous condition and failed to warn her, or (3) that the condition existed for a sufficient amount of time so that Imperial Palace should have had knowledge

4

or notice of the condition (constructive knowledge). *See Anderson v. B.H. Acquisition Inc.*, 771 So. 2d 914, 918 (¶8) (Miss. 2000) (citation omitted).

¶10.   Here, there are essentially two issues upon which it is argued that the proof is insufficient to amount to a genuine issue of material fact – the source of the water on the floor and whether there was evidence that it was there long enough for Imperial Palace to have constructive knowledge of its existence.

¶11.   "The evidence is viewed in the light most favorable to the party opposing the motion." *Davis*, 869 So. 2d at 401 (¶10).   "Summary judgment is improper when the plaintiff has advanced enough circumstantial evidence to take [her] claims out of the realm of 'mere conjecture' and plant them in the solid ground of 'reasonable inference.'" *Buckel v. Chaney*, 47 So. 3d 148, 156 (¶26) (Miss. 2010) (citation omitted).

¶12.   As to where the water came from, the Patricolas both testified that they saw water on the vent directly above the floor, but that during the time they observed it after Patricola's fall, they did not actually see water falling from the duct.   Imperial Palace's incident report states that water had fallen from the duct, but onto the nearby carpet rather than the marble floor where Patricola slipped.   Imperial Palace's employees also admitted that condensation sometimes fell to the floor from the ducts in the lobby.   There was no evidence of any other source for the water.

¶13.   Imperial Palace offers a curious argument on this point – that Patricola was required to produce expert testimony to explain the physical process that would allow condensation,

which was present along the length of the long, narrow vent, to have dripped down onto the floor in only one or two places. This assertion, although presented as self-evident, seems to fly in the face of common experience with dripping water. We certainly cannot say that the testimony was so improbable as to be unbelievable without expert testimony in support.

¶14. Given that the Patricolas are entitled to the benefit of every reasonable inference, this evidence was more than sufficient to create a genuine issue of material fact on Patricola's contention that the water on the floor came from the vent overhead.

¶15. As to whether Imperial Palace had notice of the dangerous condition, the first question we must answer is what, exactly, is alleged to be the dangerous condition. The Patricolas seem to contend that the vent itself was the dangerous condition because it was regularly subject to condensation. On that point, we disagree – the dangerous condition of the property here was the wet floor; the vent itself did not cause Patricola injury. Still, to the extent that the vent was shown to regularly put water on the floor, our supreme court has held:

> [W]hen plaintiff has shown that the circumstances were such as to create a reasonable probability that the dangerous condition would occur, he need not also prove actual or constructive notice of the specific condition, in this instance a specific puddle of water.

*F.W. Woolworth Co. v. Stokes*, 191 So. 2d 411, 416-17 (Miss. 1966) (citations omitted); *see also Lockwood v. Isle of Capri Corp.*, 962 So. 2d 645, 649 (¶13) (Miss. Ct. App. 2007). The evidence here as to the regularity of the dripping condensation problem was mixed – Patricola's husband testified to seeing water on the floor on the two occasions he visited and looked for it. Imperial Palace's employees denied that it was a problem, but they also

6

admitted it occurred with some regularity. Condensation was said to be tied to outside weather conditions; it would occur when hot, humid air from outside met the cold vent. And it was conceded that hot and humid weather was a regular occurrence in Biloxi where the casino was located. Given our summary judgment standard, that we must view this evidence in the light most favorable to Patricola and give her the benefit of all reasonable inferences from the evidence, this was sufficient evidence to create a genuine issue of material fact as to whether there was a reasonable probability that the dangerous condition would occur, obviating the need for Patricola to show that Imperial Palace had knowledge of the particular puddle that injured her.

¶16.    Moreover, even assuming that the Patricolas would have to show constructive knowledge of the puddle itself, there is a genuine issue of material fact on that point as well. The inference from the evidence is that the puddle came from water dripping from the vent. Condensation was seen hanging from the vent but not actually falling during the time it was observed.   There was no evidence that the condensation would or could have quickly produced a puddle like the one described here, which was approximately twelve inches in diameter.  A reasonable inference from these facts is that the puddle accumulated gradually, and thus that sufficient time elapsed to put Imperial Palace on constructive notice of its existence. *See Wal-Mart Stores Inc. v. Tinsley*, 998 S.W.2d 664, 669 (Tx. Ct. App. 1999).

¶17.    Finally, we address Patricola's contention that Imperial Palace is subject to liability based on the fact that the various employees who testified admitted the casino had no policy

in place to report condensation, which would have led to the condensation issue being fixed. Essentially, this is a contention that Imperial Palace created the dangerous condition by negligently installing or failing to maintain the air conditioner. We agree that if it was shown that the dangerous condition was caused by Imperial Palace's negligence, there would be no need to show that it knew of the existence of the puddle. *See, e.g., Jerry Lee's Grocery Inc. v. Thompson*, 528 So. 2d 293, 295 (Miss. 1988). But Patricola just begs the question of whether the condensation issue could have been fixed; she has offered no evidence that the air conditioner, vent, or some other aspect of the property was negligently constructed or maintained.

**CONCLUSION**

¶18. Viewing the evidence in the light most favorable to Patricola and giving her the benefit of all reasonable inferences from that evidence, there are genuine issues of material fact that preclude summary judgment on her claim.

¶19. **REVERSED AND REMANDED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

8