Sandra AGUIRRE, Mario Aguirre, and Mario Aguirre as Next Friend of Crystal Aguirre, Andrew Aguirre and Matthew Aguirre, Minor Children, Appellants,

v.

SOUTH TEXAS BLOOD & TISSUE CENTER f/k/a South Texas Blood Bank, Appellee.

No. 04–98–00688–CV.

Court of Appeals of Texas, San Antonio.

July 21, 1999.

Rehearing Overruled Aug. 16, 1999.

James L. Branton, Carol P. Lomax, Branton & Hall, P.C., San Antonio, for appellant.

George F. Evans, Jr., Evans & Rowe, P.C., Thomas H. Crofts, Jr., Ellen B. Mitchell, Crofts, Callaway & Jefferson, P.C., San Antonio, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, CATHERINE STONE, Justice.

## OPINION ON APPELLEE'S MOTION FOR REHEARING

Opinion by: PHIL HARDBERGER, Chief Justice.

The motion for rehearing filed by South Texas Blood & Tissue Center (South Texas) is granted. We withdraw our prior opinion and judgment in this matter and substitute this opinion and judgment. On reconsideration of Sandra Aguirre's appeal

of the grant of no-evidence summary judgment in favor of South Texas on her negligence claim against South Texas, we find that there is no evidence that South Texas proximately caused Aguirre to contract AIDS. We affirm the summary judgment.

## I.

Sandra Aguirre received two units of washed platelets on or about July 28, 1983 following the delivery of her second child at the Nix Memorial Hospital. The units, which were supplied by South Texas, each consisted of pooled platelets from six individual donors, for a maximum of twelve different donors.[1] Aguirre began experiencing health problems in late 1993, and was diagnosed as HIV-positive on January 4, 1994.

Aguirre brought suit against South Texas, claiming that South Texas was negligent because it failed to exercise the degree of care that is ordinarily exercised by and expected of blood banks in its drawing, preparation, handling and screening and testing of blood products, and that such negligence proximately caused Aguirre to become HIV-positive. South Texas successfully moved for summary judgment under the new no-evidence summary judgment rule, Rule of Civil Procedure 166a(i).

Aguirre appealed, and this Court reversed and remanded the summary judgment. South Texas filed a motion for rehearing, which we now grant.

## II.

Aguirre argues that the trial court erred in granting summary judgment because she raised a genuine issue of material fact regarding the standard of care, South Texas's breach of the standard of care, and proximate causation. Alternatively, Aguirre complains that South Texas's de-

---

1. Aguirre received additional transfusions after her delivery of another child in 1986. A partial summary judgment on this claim was granted in favor of South Texas, upon the trial court's finding that the evidence conclusively established that none of the 1986 donors was infected with AIDS.

struction of donor records entitles her to a presumption that the records would have benefitted her, thus raising a fact issue to preclude summary judgment.

■ Rule 166a(i) allows a litigant to move for summary judgment as to all or part of a lawsuit on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX.R. CIV. P. 166a(i). A no-evidence summary judgment is the functional equivalent of a pretrial directed verdict, so we employ the same legal sufficiency standard when reviewing a no-evidence summary judgment as we do when reviewing a directed verdict. *Graves v. Komet,* 982 S.W.2d 551, 553 (Tex.App.— San Antonio 1998, n. pet. h.); *Moore v. K Mart Corp.,* 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied.).

■ We review the evidence in the light most favorable to the respondent against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998); *Graves,* 982 S.W.2d at 553. A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. TEX .R. CIV. P. 166a(i); *see also Merrell Dow,* 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983); *Graves,* 982 S.W.2d at 553. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow,* 953 S.W.2d at 711.

## A. SUMMARY JUDGMENT EVIDENCE

■ A negligence cause of action has three elements: 1) a legal duty; 2) breach of that duty; and 3) damages proximately resulting from the breach. *Van Horn v. Chambers,* 970 S.W.2d 542, 544 (Tex.), *cert. denied,* —— U.S. ——, 119 S.Ct. 546, 142 L.Ed.2d 454 (1998).

Aguirre presented voluminous evidence regarding the applicable standard of care for blood donor screening and testing for the relevant time period and whether South Texas breached that standard of care. Consistent with our previous opinion, we agree that the evidence presented created a genuine issue of material fact on two elements—duty and breach. However, when we focus on the element of causation on reconsideration, we are compelled to find that the record before us contains no evidence that South Texas's breach, if any, proximately caused Aguirre to contract AIDS. Rule 166a(i) allows a litigant to move for summary judgment as to all or part of a lawsuit on the ground that there is no evidence of *one or more essential elements* of a claim or defense on which an adverse party would have the burden of proof at trial. Thus, even if there is a genuine issue of material fact as to two elements of Aguirre's claim, no evidence of just one element will support the granting of summary judgment.

■ Aguirre asks this Court, as she asked the trial court, to apply a rebuttable presumption that the donor records South Texas destroyed were prejudicial to South Texas so that she might survive no-evidence summary judgment. Aguirre contends that South Texas had a duty not to destroy its donor records, and that such breach of its duty raises a jury question on the issue of negligence.

South Texas destroyed all of its donor records from 1983 on February 13, 1989, in the regular course of business, in accordance with the then-current Standard Operating Procedures of the American Association of Blood Banks, an industry-wide organization, which provided for the de-

struction of donor records after five years.[2]

In *Trevino v. Ortega*, the Texas Supreme Court expressly rejected spoliation of evidence as an independent tort. 969 S.W.2d 950, 951 (Tex.1998). Rather, the Court held, the aggrieved party's complaint about spoliation is appropriately remedied in the context of the lawsuit, noting that "evolving remedies, sanctions and procedures are available under Texas jurisprudence," and that "[t]rial judges have broad discretion to take measures ranging from a jury instruction on the spoliation issue to, in the most egregious case, death penalty sanctions." *Id.* at 951, 953. The intentional destruction, or spoliation, of evidence relevant to a case may, in the trial court's discretion, give rise to a presumption that the destroyed evidence would not have been favorable to its destroyer. *Ordonez v. M.W. McCurdy & Co., Inc.,* 984 S.W.2d 264, 273 (Tex.App.— Houston [1st Dist.], no pet.). This presumption may be rebutted by a showing that the evidence in question was not destroyed with fraudulent intent or purpose. *Id.*

Because Aguirre raised the issue of entitlement to a presumption in her response to summary judgment, and the trial court nonetheless granted summary judgment, we presume that the trial court considered and rejected Aguirre's claim for a presumption since a presumption would have precluded summary judgment. Thus, our review of the granting of summary judgment is slightly modified. Because the trial court has the discretion to grant a spoliation presumption, we first must review the trial court's implied rejection of Aguirre's request for a presumption for an abuse of discretion. Finding no abuse of discretion, we proceed under the no-evidence standard to determine whether, without the presumption, more than a scintilla of evidence exists precluding summary judgment.

In support of her position that she is entitled to a favorable presumption, Aguirre presented two pieces of evidence. First, she attempted to show that South Texas was on notice of potential tainted blood liability through the affidavit of an attorney retained in October 1988 by the family of Miguel Ramirez, who died of AIDS complications following a blood transfusion he received in 1984. In his affidavit, the attorney avers that "more likely than not" he sent a records request to South Texas in the fall of 1988, requesting records pertaining to the blood Ramirez received. However (and ironically), because Perkins destroyed his litigation file pertaining to the matter, he could not prove that he had. The evidence does show that Perkins sent an article 4590i letter to South Texas on April 4, 1989, two months after the 1983 donor records were destroyed.

Aguirre next introduced the deposition testimony of Dr. Norman Kalmin, director of South Texas, where he testifies that there was a general discussion about transfusion-related AIDS cases in the blood-bank community in 1983, but that South Texas was not aware of any potential litigation directed against itself. Dr. Kalmin admits that he received the letter from Perkins in April of 1989. Kalmin testified that the Ramirez litigation was the only other AIDS-related type claim that had been brought against South Texas to date.

The evidence shows that South Texas had no actual notice that it would be called to defend a lawsuit arising out of the 1983 transfusions, and had no reasonable expectation at the time that it would be called to defend against them. Since South Texas acted in its regular course of business in destroying records at the time, without scienter or negligence on its part, we find that the trial court did not err in finding

---

**2.** The AABB recommendations were amended in 1990 to provide for the indefinite retention of donor records.

that Aguirre would not be entitled to an instruction that a jury should presume that the destroyed records would have been of benefit to her because the evidence and controlling law do not support such a finding.

█ We then turn to the issue of whether, without the presumption, Aguirre brought forth more than a scintilla of evidence to survive the no-evidence summary judgment motion. We find that she did not.

This record contains no evidence of proximate cause. Aguirre herself does not seriously contest this. While Aguirre is able to explain why there is no evidence in the record (the records she needs to prove causation have been destroyed), she cannot change the fact that there is no evidence in the record to show proximate cause. Aguirre was required to come forward with some evidence on proximate cause to survive no-evidence summary judgment. Even if Aguirre were able to find a way to prove proximate causation without the donor records, it was her burden to have brought forward that evidence at the no-evidence summary judgment stage to overcome summary judgment while she more fully developed the evidence for trial. Having failed to do this, the summary judgment must be affirmed based on the record before us.

Summary judgment is a harsh result, and we have sympathy for Aguirre. We acknowledge that the destruction of records effectively eliminates the ability of Aguirre to attempt to prove that she received tainted blood. However, even if Aguirre were able to identify those donors whose blood she received, and one of the donors were HIV-positive, this does nothing to show how South Texas violated the standard of care, such that South Texas was liable. Certainly this evidence would create a missing causation link in that it might show that the tainted blood caused Aguirre to contract the HIV virus, but it would still be no evidence that *South Texas's breach* of the applicable standard of care *proximately caused* Aguirre to become infected. In other words, identifying an HIV donor would not necessarily show that South Texas was negligent. South Texas could have asked all the pertinent medical questions, received negative answers, that is, followed the applicable standard of care to the letter, and the infected donor (who may not have known, and in all likelihood during the relevant time period, would not have known of his or her infection) would still have donated.

It is inconsistent with the goal of no-evidence summary judgment to compel a defending party to trial where the proponent party will have no evidence on an essential element where the complete lack of evidence is apparent after a reasonable time for discovery has elapsed. The greater injustice here would be to allow Aguirre to proceed to trial, perhaps obtain a favorable verdict, and face its certain reversal on appeal because it is not supported by legally sufficient evidence.

Even when the evidence is viewed in the light most favorable to her, we find that Aguirre has failed to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact on the issue of proximate causation, an essential element of her claim.

## III.

We grant South Texas's motion for rehearing and affirm the trial court's granting of South Texas's motion for summary judgment.