COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-06-097-CV

 

 

ADOBE LAND CORPORATION; ADOBE                                  APPELLANTS

CATTLE
COMPANY (A GENERAL 

PARTNERSHIP);
CHERRY CREEK FARMS 

(A
GENERAL PARTNERSHIP); VANGUARD 

AG
SERVICES, INC.; AND ADOBE IRRIGATION

AND
AG SERVICES, L.L.C.

 

                                                   V.

 

GRIFFIN, L.L.C.                                                                      APPELLEE

 

                                              ------------

 

           FROM
THE 236TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

                                                   I.  Introduction








Appellants Adobe Land Corporation, Adobe Cattle Company (A
General Partnership), Cherry Creek Farms (A General Partnership), Vanguard Ag
Services, Inc., and Adobe Irrigation and Ag Services, L.L.C. (AAppellants@) appeal from the
trial court=s grant of a no-evidence summary judgment
in favor of Appellee Griffin, L.L.C. (AGriffin@).  Because the trial court abused its discretion
in refusing to grant Appellants a spoliation presumption we reverse the trial
court=s judgment and
remand this case for further proceedings.

                               II.  Factual and Procedural Background

Griffin is a manufacturer of
various crop protection chemicals including ATrilin,@ a
herbicide.  In early 2000, Appellants,
farmers of approximately 3,200 acres of alfalfa in West Texas, hired Helena
Chemical Company (AHelena@) to impregnate fertilizer with Trilin and apply the mixture to their
alfalfa crops for the purposes of providing weed control in their fields.  According to Appellants, Helena obtained the
Trilin from Robertson=s Bonded
Warehouse, a Lubbock storage facility commonly used by vendors to store
agricultural products, and Robertson=s Bonded Warehouse, in turn, obtained the Trilin directly from the
manufacturer Griffin.  Helena then
impregnated the fertilizer with the Trilin and applied the mixture to
Appellants= fields as
requested.[1]  








In the months following the
application, Appellants began to notice an abundance of weeds present
throughout their fields and a decline in their alfalfa production.  Appellants voiced these concerns to Helena in
June 2000 after the spring growing season produced diminishing crop yields.  Helena, in turn, notified Griffin regarding
Appellants= complaints,
and, in response, representatives from both companies traveled to West Texas to
inspect the fields.  Based on its
observations, Griffin determined that the Trilin should have provided
Appellants with better weed control, and had it done so, Appellants= crop yield would not have been adversely affected.  Therefore, Griffin credited Appellants for
their purchases of the Trilin under the terms of the product=s warranty in order to Asatisfy them and take care of the - - problem.@   

However, Appellants continued
to experience diminished alfalfa productivity throughout the remainder of the
2000 growing season.  Appellants reported
that the plants lacked vigor and had an unnatural bluish-green color they had
never seen before.  By early 2001, the
loss of productivity from the fields became acutely severe and some of the
plants began to die.  The fields
eventually ceased to yield any meaningful production and all remaining plants
died in August 2001.  








In June 2002, Appellants sued
Griffin for negligence, products liability, and breach of warranty.  In their original petition, Appellants
alleged that Athe alfalfa
has been eliminated by the defective Trilin supplied by Griffin@ and that A[they] seek
compensation for the lost crop that resulted from the use of the defective
Trilin.@  In December 2002, Appellants
sought to obtain documents from Griffin regarding any possible contamination of
the Trilin, as well as any documents that demonstrated the chain of custody of
the Trilin actually applied to their fields. 
In response to each of these requests, Griffin stated that A[it] is currently attempting to locate responsive documents, and [that
it] will produce them promptly when located.@ 

The record also indicates
that, as part of its standard operating procedure, Griffin had an internal
policy that required its quality control personnel to retain composite samples
of every batch of Trilin that the company manufactured for a period of three
years following its production.  In
accordance with this policy, Griffin would assign each batch of Trilin a unique
identifying Alot number@ at the time of its production. 
Griffin employees would then take an eight ounce sample of each batch,
record the corresponding Alot number@ and other key information in an analytical log book, label the sample
by Alot number,@ and store
it in a secured area specifically designated to house those samples.  The policy also provided that after the
passage of the requisite three-year storage period, the samples Amay be disposed of in accordance with [Griffin=s] waste disposal policy.@  [CR 753]








As discovery
continued, Appellants sought to obtain, test, and analyze Griffin=s retained sample of the Trilin that Helena applied to
their fields in February 2000.  However,
Griffin replied that it could not accurately identify that particular sample
and provide it to Appellants absent an identifying Alot number.@  Subsequent
depositions eventually led Appellants to identify the alleged Alot number,[2]@ which they, in turn, relayed to Griffin for the purposes
of obtaining the corresponding sample.[3]  In February 2005, Griffin informed Appellants
that the corresponding retained sample was no longer available, as it was Ain all likelihood disposed of at the end of 2002@ pursuant to Griffin=s three-year retention policy.[4]  This prompted Appellants to amend their
petition to include additional claims of negligence against Griffin, as well as
allegations of spoliation. 








In January 2006,
Griffin filed a no-evidence motion for summary judgment claiming that Appellants
had failed to produce any evidence that its product was defective or that the
alleged defect was causally related to any of Appellants= damages.[5]  In their response, Appellants sought a
spoliation presumption based on Griffin=s disposal of the retained Trilin sample.  Appellants argued that without the retained
sample, it was simply impossible for them to present any evidence on product
defect or causation.  On the day of the
hearing, Griffin filed several objections to various portions of Appellants= summary judgment evidence, which the trial court
sustained in part and overruled in part. 
After considering the remaining evidence, the trial court granted a
no-evidence summary judgment in favor of Griffin. 

                                      III.  Issues Presented

In three issues,
Appellants contend that the trial court erred by (1) granting a no-evidence
summary judgment in favor of Griffin on grounds not asserted in its motion, (2)
refusing to grant their request for a spoliation presumption, and (3)
sustaining Griffin=s objection to their summary judgment evidence.  

 

 








                           IV.  Grounds for Summary Judgment

In their first
issue, Appellants contend that the trial court erroneously granted Griffin a
no-evidence summary judgment on grounds not expressly asserted in its
motion.  Appellants argue that, although
Griffin moved for summary judgment on no-evidence grounds relating to product
defect and causation, Griffin failed to seek a no-evidence summary judgment
concerning the spoliation claim asserted in their amended petition.  Therefore, Appellants conclude that it was
improper for the trial court to grant a no-evidence summary judgment in favor
of Griffin absent Griffin=s expressly seeking a no-evidence summary judgment on the
spoliation claim.  We disagree.








Under rule
166a(i), Aa [defendant] may move for summary judgment on the ground
that there is no evidence of one or more essential elements of a claim .
. . on which [the plaintiff has] the burden of proof at trial.  See Tex.
R. Civ. P. 166a(i) (emphasis added). 
However, allegations of spoliation do not give rise to an independent
cause of action under Texas law, Trevino v. Ortega, 969 S.W.2d 950, 953
(Tex. 1998); Malone v. Foster, 977 S.W.2d 562, 563 (Tex. 1998), and,
accordingly, do not constitute claims subject to attack by way of a
no-evidence motion for summary judgment. 
Rather, spoliation is an evidentiary concept that is best remedied by
the trial court within the context of the core lawsuit in which such
allegations arise.  See Trevino, 969
S.W.2d at 953.  In those cases, the
non-spoliating party may attempt to remedy the situation by either moving for
sanctions or requesting a presumption that the destroyed evidence would not
have been favorable to the spoliator.  Id.
at 954 (Baker, J., concurring); see Brewer v. Dowling, 862 S.W.2d
156, 159 (Tex. App.CFort Worth 1993, writ denied) (discussing the presumptions
that arise from the non-production of evidence).  While rule 166a(i) requires a motion to be
specific in alleging a lack of evidence on an essential element of the
plaintiff=s cause of action, it does not require the defendant to
also attack evidentiary components, such as spoliation, that may ultimately be
used to prove the challenged element.  See
In re Mohawk Rubber Co., 982 S.W.2d 494, 497-98 (Tex. App.CTexarkana 1998, no pet.). 
Therefore, we conclude that Griffin was not required to seek a
no-evidence summary judgment on Appellants= spoliation allegations in order to properly obtain
no-evidence summary judgment relief. 
Thus, we overrule Appellants= first issue.  

                                  V.  Spoliation Presumption

By way of their
second issue, Appellants contend that they were entitled to a spoliation
presumption against Griffin as a result of Griffin=s failure to preserve its retained sample of the Trilin
that was applied to their alfalfa crop. 
Appellants argue that since they were entitled to such a presumption,
the trial court erred in granting Griffin=s no-evidence motion.   









A.     Standard of
Review

Because
Appellants raised the issue of entitlement to a spoliation presumption in their
response to the no-evidence summary judgment motion, and the trial court
nonetheless granted a no-evidence summary judgment, we presume that the trial
court considered and rejected Appellants= request for a presumption.  See Aguirre v. S. Tex. Blood & Tissue
Ctr., 2 S.W.3d 454, 457 (Tex. App.CSan Antonio 1999, pet. denied) (op. on reh=g).  Thus, our
review of the court=s grant of the no-evidence summary judgment is slightly
modified.  Id.  First, we review the trial court=s implied rejection of the request for a spoliation
presumption for an abuse of discretion.  Id.; see Wal‑Mart Stores, Inc. v.
Johnson, 106 S.W.3d 718, 723 (Tex. 2003). 
Second, if we find no abuse of discretion, we proceed under the no‑evidence
standard of review to determine whether, without the presumption, more than a
scintilla of evidence exists precluding summary judgment.  Aguirre, 2 S.W.3d at 457.








To determine
whether a trial court abused its discretion, we must decide whether the trial
court acted without reference to any guiding rules or principles; in other
words, we must decide whether the act was arbitrary or unreasonable.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159
(1986).  Merely because a trial court may
decide a matter within its discretion in a different manner than an appellate
court would in a similar circumstance does not demonstrate that an abuse of
discretion has occurred.  Id.  Additionally, an abuse of discretion does not
occur where the trial court bases its decisions on conflicting evidence.  In re Barber, 982 S.W.2d 364, 365
(Tex. 1998) (orig. proceeding).  However,
a trial court has no discretion in determining what the law is or in applying
the law to the facts, even when the law is unsettled.  In re Collins, 172 S.W.3d 287, 292
(Tex. App.CFort Worth 2005) (orig. proceeding).  Thus, a clear failure by the trial court to
analyze or apply the law correctly will constitute an abuse of discretion.  Id.

B.     Discussion

As explained in
Justice Baker=s notable concurrence in Trevino, the inquiry as to
whether a spoliation presumption is justified requires a court to consider (1)
whether there was a duty to preserve evidence; (2) whether the alleged
spoliator breached that duty; and (3) whether the spoliation prejudiced the
non-spoliator=s ability to present its case or defense.  Trevino, 969 S.W.2d at 954-55 (Baker,
J., concurring); Offshore Pipelines, Inc. v. Schooley, 984 S.W.2d 654,
666 (Tex. App.BHouston [1st Dist.] 1998, no pet.).

1.     Duty to Preserve Evidence








Before any
failure to produce evidence may be viewed as discovery abuse, the opposing
party must establish that the non‑producing party had a duty to preserve
the evidence in question.  Wal‑Mart
Stores, Inc., 106 S.W.3d at 722. 
Such a duty arises only when a party knows or reasonably should know
that there is a substantial chance that a claim will be filed and that evidence
in its possession or control will be potentially relevant to that claim.  See id. (citing 1 Weinstein & Berger, Weinstein's Federal
Evidence ' 301.06 [4] at 301‑28.3 (2d ed. 2003)) (A[T]here must be a sufficient foundational showing that the
party who destroyed the evidence had notice both of the potential claim and of
the evidence=s potential relevance@ before a duty to preserve arises); Tex. Elec. Coop. v.
Dillard, 171 S.W.3d 201, 209 (Tex. App.CTyler 2005, no pet.). 
The duty is not so encompassing as to require a litigant to keep or
retain every document in its possession. 
Trevino, 969 S.W.2d at 957 (Baker, J., concurring).  However, it does require the party to
preserve what it knows, or reasonably should know is relevant in the action, is
reasonably calculated to lead to the discovery of admissible evidence, is
reasonably likely to be requested during discovery, or is the subject of a
pending discovery sanction.  Id.








In this case,
Griffin argues that it had no duty to preserve the Trilin sample because the
company did not consider it material evidence that was in any way relevant to
the claims being asserted by Appellants at the time the sample was
discarded.  According to Griffin, it
interpreted Appellants= original petition, which served as the live pleading
before the court at the time of the alleged spoliation, as asserting nothing
more than allegations of inadequate weed control.  Griffin contends that it was unaware of
Appellants= position regarding the possible contamination of the
Trilin at that time and asserts that it did not receive notice of the
contamination claim until well after it disposed of the sample.  However, Griffin=s subjective interpretation of Appellants= petition is not determinative.  See Wal-Mart Stores, Inc., 106 S.W.3d
at 722.  Rather, we apply an objective
standard in determining whether a party had notice of both the underlying claim
and of the potential relevance of the evidence in question.  See id.













Appellants filed
the underlying lawsuit against Griffin in June 2002.[6]  This filing effectively served to provide
Griffin with notice of the claims asserted in the petition and to trigger
Griffin=s duty to preserve all evidence that it knew or reasonably
should have known could be potentially relevant to those claims.[7]  See Trevino, 969 S.W.2d at 955
(Baker, J., concurring) (noting that a party=s duty to preserve evidence unquestionably arises during
pending litigation).  In their petition,
Appellants expressly alleged that the Trilin applied to their fields was Adefective@ and that the herbicide proximately caused the elimination
of their entire 3,200 acre alfalfa crop. 
While the petition did not explicitly use the term Acontamination,@ it did put Griffin on notice that its product was
potentially defective, that Appellants had allegedly suffered substantial
damages from using the Trilin, and that the cause of the defect had not yet
been determined.  Our review of the
record also indicates that Griffin did not routinely test or analyze any of its
Trilin, either pre- or post-production, for contaminants.[8]  Therefore, the only way Appellants could have
possibly obtained information relating to the Trilin=s possible contamination in this case was to obtain the
retained sample in question and conduct their own independent chemical
analysis.[9]  Applying an objective standard, we conclude
that Griffin knew or at least reasonably should have known of Appellants= contamination claim and that its retained sample would
be, at the very least, potentially relevant to the underlying litigation.  Thus, Griffin had a duty to preserve it.  See Wal‑Mart Stores, Inc., 106
S.W.3d at 722. 

Alternatively,
Griffin argues that it had no duty to preserve the sample at the time it was
disposed of because Appellants had not yet provided it with the Alot number@ of the Trilin that was applied to their fields.  Griffin contends that without that number it
was unable to identify which of its retained Trilin samples corresponded with
the batch of Trilin actually utilized on Appellants= alfalfa in February 2000. 
Therefore, Griffin asserts that even if it had a duty to preserve the sample,
that duty did not arise until after the Appellants identified the relevant
sample by Alot number,@ which in this case did not occur until after the sample
in question was already discarded.  We
disagree.








As explained
above, a party=s duty to preserve arises as soon as the party has notice
that evidence in its possession or control may be relevant to the
litigation.  See Vela v. Wagner &
Brown, Ltd., 203 S.W.3d 37, 58 (Tex. App.CSan Antonio 2006, no pet.).  In this case, it was the filing of the
original petition that put Griffin on notice that at least one of its retained
Trilin samples constituted material evidence relevant to the underlying
contamination claims.  Although
Appellants were unable to identify that sample by Alot number@ at the time they filed their petition, that filing,
nevertheless, triggered Griffin=s duty to preserve all Trilin samples that were then in
its possession and potentially relevant to the claims being
asserted.  See Wal‑Mart Stores,
Inc., 106 S.W.3d at 722 (citing 1 Weinstein
& Berger, Weinstein's Federal Evidence ' 301.06 [4] at 301‑28.3 (recognizing that notice of
evidence=s potential relevance triggers duty to preserve that
evidence); Tex. Elec. Coop., 171 S.W.3d at 209.  

The original
petition was filed in June 2002. 
Accordingly, under the terms of Griffin=s own sample retention policy, the company, at that time,
would have had in its possession samples of all Trilin that it had manufactured
over the preceding three yearsC1999, 2000, and 2001. 
The petition also stated that Helena applied the allegedly defective
Trilin to Appellants= fields Ain 2000.@  Thus, absent an
identifying Alot number,@ all of Griffin=s retained samples from 1999 and 2000 were potentially
relevant to Appellants= claims at that time and, therefore, fell within the scope
of Griffin=s duty to preserve.[10]  Appellant=s inability to identify the specific Alot number@ of the retained sample of Trilin actually applied to
their fields did not relieve Griffin of its duty to preserve all potentially
relevant Trilin samples.

 








2.     Breach of Duty








After concluding
that Griffin had a duty to preserve the sample, we must now determine whether
Griffin breached that duty.  See
Trevino, 969 S.W.2d at 957 (Baker, J., concurring).  While parties need not take extraordinary
measures to preserve evidence, they have a duty to exercise reasonable care in
preserving potentially relevant evidence. 
See id.  Therefore, in
accordance with this duty, it is only logical that parties should be held
accountable for either negligent or intentional spoliation.  Id. 
This effectively places the burden of the prejudicial effects
associated with the failure to preserve upon the culpable spoliating party
rather than the innocent non-spoliating party. 
Id.  However, a spoliator
can defend against an assertion of negligent or intentional destruction by
providing other explanations in an attempt to justify its failure to preserve
evidence.  Id.  Here, Griffin admits to destroying the
sample in question.  Nevertheless, the
company argues that because it discarded the sample in the ordinary course of
its business, in accordance with its sample retention policy, it did not breach
any duty it may have owed to Appellants. 
However, when a party=s duty to preserve evidence arises before the destruction
or when a policy is at odds with a duty to maintain records, the policy will
not excuse the obligation to preserve.  Id.  In this case, Griffin=s duty to preserve arose well before it discarded the
sample.  Therefore, Griffin=s failure to preserve cannot be justified simply because
the evidence was destroyed pursuant to its corporate policies.  See id. 
Thus, we conclude that Griffin breached its duty owed to Appellants
by not preserving the retained Trilin sample once Appellants filed the
underlying suit.

3.     Prejudice

The final step of
our inquiry focuses on whether Griffin=s spoliation prejudiced Appellants= ability to present their case.  Offshore Pipelines, Inc., 984 S.W.2d
at 666 (citing Trevino, 969 S.W.2d at 954-55 (Baker, J.,
concurring)).  In making this
determination, we look to a variety of circumstances such as the relevancy of
the missing evidence and the availability of other evidence to take the place
of the missing information. Trevino, 969 S.W.2d at 958 (Baker, J.,
concurring).













The discarded
sample clearly constituted material evidence that went to the very heart of
Appellants= claims, and the record reveals no other comparable
evidence which would enable the parties to discover the true chemical composition
of the allegedly defective Trilin. 
Nevertheless, Griffin contends that we must affirm the trial court=s judgment because the court Acould have concluded@ that its disposal of the sample did not prejudice the
Appellants.  Griffin cites us to Malone
v. Foster, 977 S.W.2d 562, and Cresthaven Nursing Residence v. Freeman, 134
S.W.3d 214 (Tex. App.CAmarillo 2003, no pet.), in support of its contention that
Appellants have failed to satisfy the prejudice threshold necessary to warrant
a spoliation presumption.  However, in
both of those cases, the court determined that the plaintiffs were not prejudiced
by the defendants= spoliation because the plaintiffs had other evidence
available to them that contained the same information as the documents which
were destroyed.  See Malone, 977
S.W.2d at 564 (available nursing report incorporated contents of destroyed
incident report); Cresthaven Nursing Residence, 134 S.W.3d at 227
(verbatim hand-written copy of missing nurse=s notes available to plaintiffs at trial).  In this case, Appellants do not have access
to any other evidence which would provide them with the same information they
sought to obtain by testing the retained sample.  Therefore, Griffin=s spoliation severely hindered Appellants= ability to present their case,  Offshore Pipelines, Inc., 984 S.W.2d at
666, and the trial court abused its discretion in not granting Appellants a
spoliation presumption as a means of precluding a no-evidence summary judgment.[11]  See Trevino, 969 S.W.2d at 960 (Baker,
J., concurring); Martinez v. Abbott Labs., 146 S.W.3d 260, 269 (Tex.
App.CFort Worth 2004, pet. denied); Aguirre, 2 S.W.3d at
457.  Accordingly, we sustain Appellants= second issue.[12]

                                  VI.  Conclusion

Having determined
that Appellants were entitled to a spoliation presumption and that the trial
court erred in granting Griffin=s no-evidence 
motion, we reverse the judgment in favor of Appellee and remand this
case for further proceedings.  

 

 

ANNE GARDNER

JUSTICE

 

PANEL B:   HOLMAN, GARDNER, and WALKER, JJ.

 

DELIVERED:  July 12, 2007

 

 











[1]Appellants contend that Helena
applied the Trilin to the fertilizer at a rate of two quarts per acre, which
was in accordance with Griffin=s recommendation as dictated on its product=s label. 





[2]Appellants
have identified that Alot
number@ as
either 9-340-92 or 9-341-92.  James Bone,
Griffin=s
North American Vice President of Sales, stated in his deposition that the
discrepancy between these two numbers is irrelevant as the last number in the
sequence is the key number in identifying the Alot@
while the other numbers simply refer to calendar dates.  Bone explained that, while both 9-340-92 and
9-341-92 came from Alot
92@ one
was produced on the 340th day of 1999 while the other was produced
on the 341st day of that same year. 





[3]Griffin continues to dispute
whether the Trilin applied to Appellant=s fields actually came from Alot 92.@ 






[4]James
Bone later stated that the sample may have been destroyed as early as July or
August 2002.  However, Griffin has no
records reflecting the actual date of disposal. 





[5]It is important to note that for
the purposes of the motion Griffin conceded that it manufactured the Trilin
that Helena applied to Appellants= alfalfa fields. 





[6]Although
the parties continue to disagree on exactly when Griffin disposed of the Trilin
sample in question, that determination is not material to our duty analysis in
this case because under either party=s version of the facts it
remains undisputed that the sample was not discarded until some point after
Appellants filed suit.  





[7]We recognize that Griffin=s duty may have arisen prior to
Appellants filing suit.  See Trevino, 969
S.W.2d at 955-56 (Baker, J., concurring) (acknowledging potential prelitigation
duty to preserve).  However, we express
no opinion in that regard and only note that Griffin=s duty arose, at the latest, in
June 2002.  See id. at 955.  





[8]Although
the trial court excluded this summary judgment evidence finding it irrelevant
as it relates to the issue of defect and causation, the evidence may still be
considered in connection with the spoliation issue.





[9]The
record is devoid of any other evidence probative on the issue of Trilin
contamination.   





[10]The
record indicates that the 1999 and 2000 samples only took up Aa
couple of shelf sets@ in
the room in which Griffin housed them. 
Therefore, the burden imposed on Griffin by requiring it to preserve
these samples is minimal in this case. 





[11]Griffin
also argues that even if it spoliated evidence in this case, the presumption
raised would only go to the defect element of Appellants=
cause of action.  Thus, according to
Griffin, the record would remain absent of any evidence on causation thereby
allowing the trial court=s
summary judgment to remain undisturbed. 
However, when the non-spoliating party is unable to prove its prima
facie case without the destroyed evidence, a spoliation presumption will
support that party=s
assertions and serves as some evidence of the particular issue or issues that
the destroyed evidence might have supported. 
Trevino, 969 S.W.2d at 960 (Baker, J., concurring).  Here, the destroyed sample could have
provided Appellants with some of the evidence they now lack on both defect and
causation.  Therefore, the presumption in
this case will enable Appellants to survive Griffin=s
no-evidence motion for summary judgment. 
See id.  However, we
express no opinion as to the presumption=s effect in the context of a
traditional summary judgment proceeding should Griffin choose to file a
traditional summary judgment motion on remand. 





[12]Because this issue is dispositive,
we need not consider Appellants= final issue.  Tex. R. App. P. 47.1.