Opinion issued February 25, 2010 















In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00732-CV






RALPH CLARK, Appellant


V.


RANDALLS FOOD, Appellee (1)






On Appeal from the 157th District Court

Harris County, Texas

Trial Court Cause No. 2006-54824





O P I N I O N

 Appellant, Ralph Clark, appeals a final judgment ordering he take nothing from
appellee, Randalls Food (Randalls). In his sole issue, Clark contends the trial court
erred by granting Randalls's summary judgment motion because he established that
Randalls spoliated evidence. We conclude that the trial court did not abuse its
discretion by determining as a matter of law that evidence was not spoliated, and that
it properly rendered summary judgment in favor of Randalls because Clark presented
no evidence raising an issue of fact on the elements for premises liability. We affirm
the trial court's judgment.

Background In March 2005, Clark fell while walking away from a pharmacy counter at a
Randalls grocery store in Kingwood, Texas. Clark slipped on liquid detergent that
had leaked from a broken container in another customer's basket. Clark landed on
his right arm and torso. He did not receive medical care at the scene but sought
medical attention the next day. Store employees filled out an accident report and
notified Randalls's claims department. The forms indicated the surveillance footage
taken at the time of the fall was preserved at the manager's station.

 Less than a week after the incident, communication with Clark indicated he
might hire an attorney. Matthew Johnston, a senior claims adjuster for Randalls,
acknowledged the company was aware soon after the accident occurred that Clark
might sue because there is always a substantial chance of a claim when a customer
has an accident. 

 Although no one had requested preservation of the videotape of Clark's fall,
Johnston left a message with the Kingwood store asking them to preserve the
surveillance video. Johnston also informed the Kingwood store that if the store was
not aware of the detergent or if the spill had not been there a long time prior to the
fall, Randalls would not be liable. An employee from Randalls loss prevention went
to the Kingwood location to assist the store in making a copy of the video.

 When the copy of the surveillance video was made, only a portion of the
surveillance video was copied. It is unclear who determined how much footage to
preserve and why the specific times were chosen. The tape preserved by Randalls
included footage from 2:59 p.m. until 3:05 p.m., with the fall occurring 45 seconds
after 3:00 p.m. The footage started when Clark approached the counter and ended a
short time after the fall.

 Over four months after the accident, Clark's attorney first contacted Randalls
and requested a settlement. Randalls had deemed the incident closed because Clark
had failed to respond to Randalls's attempts at communication. By the time Clark's
attorney contacted Randalls, any footage not previously saved had been erased by the
store pursuant to Randalls's normal procedure to preserve tapes for 60 to 90 days
only. After Clark requested the settlement, the claims department reopened the case
and it viewed the video for the first time. 

 Eighteen months after the fall, and after Randalls's denial of Clark's settlement
request, Clark filed suit against Randalls. Denying it had prior knowledge of the
liquid on the floor, Randalls responded to the lawsuit with a matter-of-law and no-evidence motion for summary judgment. (2) In its motion for summary judgment,
Randalls presented an interrogatory response given by Clark, an affidavit of a
pharmacy technician present at the time of the incident, and an affidavit of the service
manager on duty at the time Clark fell. Both affidavits stated that Randalls
employees had not been informed of the liquid by customers nor had they seen liquids
on the floor prior to the incident. The affidavit of the store service manager stated
that a walk-through of the store to check for hazards was conducted about an hour
prior to the incident, and no substances or spills were found. 

 Along with his response to the summary judgment motion, Clark filed a motion
for sanctions for spoliation for footage missing from the surveillance video showing
more of the time preceding Clark's fall. Clark requested the court grant a default
judgment against Randalls, or declare the video as presumptively adverse and
unfavorable to Clark so as to defeat Randalls's motion for summary judgment. 
Clark's motion for a spoliation finding asserts that the failure to preserve footage
prior to one minute and 46 seconds before Clark fell means that Randalls destroyed
evidence that may have been favorable to Clark's premises liability claim. For
example, Clark contends the missing footage may have shown an employee walking
down the aisle and observing the liquid or have shown that an employee performed
the hourly walk-through of the store to check for hazards on the selling floor. Clark
also asserts the footage may have shown the time the customer pushing the detergent-leaking cart walked past the counter, which would give an idea about how long the
spill was present. 

 The video of Clark's fall was included as part of the record presented to the
trial court. The video appeared to have been captured by a stationary camera
mounted behind the pharmacy counter, which blocked the view of most of the floor
where Clark stood. The video showed Clark as he engaged in a transaction at the
counter before he turned away from the counter and fell. The only parts of the floor
that were visible on the tape were the parts further away from the counter and just
beyond where Clark fell. Due to the tape's quality, no liquid was visible anywhere
on the tape. 

 The trial court denied Clark's motions for sanctions due to spoliation of
evidence, granted Randalls's no-evidence and matter-of-law motion for summary
judgment, ordered Clark take-nothing, and dismissed all causes of action with
prejudice. 

Analysis

 In his sole issue, Clark asserts he was entitled to either spoliation sanctions or
a spoliation presumption against Randalls as a result of its failure to preserve portions
of the surveillance video footage. Clark contends that since he was entitled to
sanctions or a presumption, the trial court erred in granting Randalls's no-evidence
and traditional motion for summary judgment.

 A. Standard of Review for Summary Judgment

 Although it expressly rejected Clark's request for spoliation sanctions, the trial
court also implicitly denied the request by granting Randalls's motion for summary
judgment. See Adobe Land Corp. v. Griffin, L.L.C., 236 S.W.3d 351, 356-57 (Tex.
App.--Fort Worth 2007, pet. denied) (citing Aguirre v. S. Tex. Blood & Tissue Ctr.,
2 S.W.3d 454, 457 (Tex. App.--San Antonio 1999, pet. denied); Sowell v. The
Kroger Co., 263 S.W.3d 36, 37-38 (Tex. App.--Houston [1st Dist.] 2006, no pet.)
(citing Aguirre, 2 S.W.3d at 457). We, therefore, must first review whether the trial
court abused its discretion by denying the motion for a finding of spoliation. Adobe
Land Corp., 236 S.W.3d at 357 (citing Wal-Mart Stores, Inc. v. Johnson, 106 S.W.3d
718, 722 (Tex. 2003)); Sowell, 263 S.W.3d at 38. If the trial court did abuse its
discretion by denying the spoliation finding, then summary judgment would be
improper. Adobe Land Corp., 236 S.W.3d at 360-61. If, however, we determine the
trial court did not abuse its discretion by denying a spoliation finding, we do not
consider any presumptions related to spoliation of evidence and review the no-evidence and traditional summary judgment by examining whether there is more than
a scintilla of evidence to preclude summary judgment. Id. at 357 (citing Aguirre, 2
S.W.3d at 457); Sowell, 263 S.W.3d at 38. Here, Clark's sole challenge to the motion
for summary judgment concerns the trial court's refusal to make a spoliation finding;
he does not contend that without the finding there is more than a scintilla of evidence
to preclude summary judgment.

 To determine whether a trial court abused its discretion, we must decide
whether the trial court acted without reference to any guiding rules or principles; in
other words, we must decide whether the act was arbitrary or unreasonable. 
Mercedes-Benz Credit Corp. v. Rhyne, 925 S.W.2d 664, 666 (Tex. 1996). An abuse
of discretion does not occur where the trial court bases its decisions on conflicting
evidence. In re Barber, 982 S.W.2d 364, 366 (Tex. 1998). However, a trial court has
no discretion in determining what the law is or in applying the law to the facts. 
Adobe Land Corp., 236 S.W.3d at 357. 

 B. Applicable Law Concerning Spoliation

 The act of spoliation refers to destruction of evidence relevant to a case. 
Buckeye Ret. Co. v. Bank of Am., N.A., 239 S.W.3d 394, 401 (Tex. App.--Dallas
2007, no pet.). Trial courts have broad discretion in taking measures to address
spoliation of evidence that include "measures ranging from a jury instruction on the
spoliation presumption to, in the most egregious cases, death penalty sanctions." 
Trevino v. Ortega, 969 S.W.2d 950, 953 (Tex. 1998). "As with any discovery abuse
or evidentiary issue, there is no one remedy that is appropriate for every incidence of
spoliation; the trial court must respond appropriately based upon the particular facts
of each individual case." Id.

 The inquiry as to whether a spoliation sanction or presumption is justified
requires a court to consider (1) whether there was a duty to preserve evidence, (2)
whether the alleged spoliator breached that duty; and (3) whether the spoliation
prejudiced the non-spoliator's ability to present its case or defense. Adobe Land
Corp., 236 S.W.3d at 357; Offshore Pipelines, Inc. v. Schooley, 984 S.W.2d 654, 666
(Tex. App.--Houston [1st Dist.] 1998, no pet.). 

 1. Duty to Preserve Evidence

 The duty to preserve evidence is not raised unless (a) a party knows or
reasonably should know that there is a substantial chance a claim will be filed, and
(b) evidence is relevant and material. See Johnson, 106 S.W.3d at 722. 

 a. Knowledge of Claim

 To prevail on the first prong, Clark suggests he has shown Randalls knew or
reasonably should have known there was a substantial chance that Clark would file
a premises liability claim. See id. A party can anticipate litigation before it receives
actual notice of potential litigation. Nat'l. Tank Co. v. Brotherton, 851 S.W.2d 193,
204 (Tex. 1993). "[C]ommon sense dictates that a party may reasonably anticipate
suit being filed . . . [even] before the Plaintiff manifests an intent to sue." Id. Clark
points to Randalls's answer to the following interrogatory, which asks "when did
Randalls first believe that there was a substantial chance that Mr. Clark would file a
claim?" Randalls answered, "[a]fter [Clark] fell, it was known that he might pursue
a claim or file a lawsuit as in Randalls's business, customer accidents result in the
substantial chance of a claim in each occurrence." Because Randalls acknowledged
it knew there was a "substantial chance" a claim would be filed, we conclude the
undisputed evidence shows Clark established the first prong. See Johnson, 106
S.W.3d at 722.

 b. Relevance of Material

 To prevail on the second prong, Clark must show that Randalls knew or should
have reasonably known that the footage would be relevant to the action. See id. A
party must preserve what it knows, or reasonably should know is relevant in the
action, is reasonably calculated to lead to the discovery of admissible evidence, is
reasonably likely to be requested during discovery, or is the subject of a pending
discovery sanction. Trevino, 969 S.W.2d at 957 (Baker, J., concurring). Evidence
is relevant if it has "any tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable than
it would be without the evidence." Tex. R. Evid. 401. If there is some logical
connection either directly or by inference between the evidence and a fact to be
proved, the evidence is relevant. See Serv. Lloyds Ins. Co. v. Martin, 855 S.W.2d
816, 822 (Tex. App.--Dallas 1993, no writ). The four elements of a premises
liability cause of action are:

 (1) the owner had actual or constructive knowledge of some
condition on the premises;


 (2) the condition posed an unreasonable risk of harm;


 (3) the owner did not exercise reasonable care to reduce or
eliminate the risk of harm; and


 (4) the owner's failure to use such care proximately caused the
plaintiff's injuries.


LMB, Ltd. v. Moreno, 201 S.W.3d 686, 688 (Tex. 2006). Randalls's motion for
summary judgment challenges the first, third, and fourth of these elements. Temporal evidence is also relevant to premises liability claims. See Wal-Mart
Stores, Inc. v. Reese, 81 S.W.3d 812, 815 (Tex. 2002). If evidence does not show
actual knowledge of a dangerous condition, we require proof that a dangerous
condition existed for some length of time before a premises owner may be charged
with constructive notice. See id. This so called "time-notice rule" is based on the
premise that temporal evidence best indicates whether the owner had a reasonable
opportunity to discover and remedy a dangerous condition. Id. at 816. Even if an
employee had proximity to the hazard, without some temporal evidence, there is no
basis upon which the fact finder can reasonably assess the opportunity the premises
owner had to discover the dangerous condition. Id.

 Clark points out that Johnston told the store management, "[u]nless we were
aware of the spilled detergent or it had been there a long time we are not liable." The
record undisputedly shows, therefore, that Randalls was aware of the importance of
the temporal element of Clark's claim, and that their actual or constructive awareness
of the spill would be material to Clark's claim. See Moreno, 201 S.W.3d at 688. 

 Randalls contends the tape lacked relevance because it does not show the floor
where Clark fell. Randalls's response to the motion for sanctions for spoliation
states, 

 The video camera angle does not show the floor directly in front of the
pharmacy because the floor is blocked by the pharmacy counter.
Although the video camera may have captured people that walk by in
front of the pharmacy, it is apparent from the angle of the video camera,
that there would have been no way to tell whether any particular
person's cart was leaking any liquid. . . . Furthermore, even if the video
footage that was destroyed did not show any employees walking in front
of the pharmacy counter, that is not proof that Defendant's employees
did not perform the hourly walkthrough of the Defendant's premises. 


 Because it relies on the hourly walk though to show it did not know about the
spill, at least one hour of the footage of the events preceding Clark's fall was relevant,
and that portion of tape should have been preserved. Although the video does not
show the floor where Clark fell, it would, for example, show whether someone else
slipped or almost slipped at the same location in the hour before Clark fell. If
someone had previously slipped there, then that would show how long the substance
had been there. If someone had not previously slipped there, then that would suggest
the substance was not there long before Clark fell. The footage of the one hour
preceding Clark's fall, therefore, has a "tendency to make the existence of any fact
that is of consequence to the determination of the action more probable or less
probable than it would be without the evidence." See Tex. R. Evid. 401. We hold
Randalls knew the events for the one hour preceding Clark's fall were relevant. See
Trevino, 969 S.W.2d at 957 (Baker, J., concurring) (noting that party should preserve
what it reasonably should know is likely to be requested during discovery). 

 The record conclusively shows that Randalls knew of an impending claim, and
was aware that footage of events preceding Clark's fall was relevant to Clark's claim.
We, therefore, hold Randalls had a duty to preserve the footage preceding Clark's
fall. 

 2. Breach of Duty

 Having concluding that Randalls had a duty to preserve the video footage, we
must now determine whether Randalls breached that duty. See id.; Adobe Land
Corp., 236 S.W.3d at 359. While parties need not take extraordinary measures to
preserve evidence, they have a duty to exercise reasonable care in preserving
potentially relevant evidence. Id. The burden of the prejudicial effects associated
with the failure to preserve evidence is placed on the culpable spoliating party rather
than the innocent non-spoliating party. Id. A spoliator, however, can defend against
an assertion of negligent or intentional destruction by providing other explanations
to justify its failure to preserve evidence. Id.

 As discussed above, the record shows that Randalls knew it had a duty to
preserve relevant footage preceding Clark's fall within five days after Clark fell. 
When the entire video of events preceding the fall was still available for preservation,
Randalls only preserved footage that captures Clark as he first approaches the
counter, his fall, and the minutes that followed. In this case, Randall's duty to
preserve arose well before it destroyed the relevant footage pursuant to its retention
policy to keep tapes for 60 to 90 days only. Because Randalls had a duty to preserve
the footage before it destroyed the footage, we hold Randalls breached its duty to
exercise reasonable care in preserving evidence. Id. at 360.

 3. Prejudice

 The final step of our inquiry focuses on whether Randalls's spoliation
prejudiced Clark's ability to present his case. See Schooley, 984 S.W.2d at 666
(citing Trevino, 969 S.W.2d at 954-55 (Baker, J., concurring); Adobe Land Corp.,
236 S.W.3d at 360. "[T]he spoliating party is [ ] free to attempt to show that . . . no
prejudice" resulted from the negligently destroyed evidence." Trevino, 969 S.W.2d
at 958 (Baker, J., concurring). In making this determination, we look to a variety of
circumstances such as (a) the harmful effect of the missing evidence, and (b) the
availability of other evidence to take the place of the missing information. Adobe
Land Corp., 236 S.W.3d at 360; Schooley, 984 S.W.2d at 667.

 a. Harmful Effect of Missing Evidence

 Having already determined the footage not preserved by Randalls was relevant
to the premises liability lawsuit, we must address how the failure to preserve it has
prejudiced Clark's lawsuit. In determining whether a party was harmed by spoliated
evidence, we consider "whether the destroyed evidence supports key issues in the
case." Trevino, 969 S.W.2d at 958 (Baker, J., concurring). 

 The trial court could reasonably have determined that the missing videotape
footage was not evidence that supports key issues in the case because the key issue
here is whether there was liquid on the floor, and the camera was unable to capture
whether there was liquid on the floor and when it may have gotten there. For
example, if the tape showed an employee performing a walk-though one hour before
the event, that would not reveal whether the employee saw the liquid because the tape
of Clark's fall does not show any visible liquid. Similarly, if the tape showed no
employee was seen performing a walk-through one hour before the event, a walk-though could still have occurred at that area with the employee standing nearby but
outside of the camera range. The trial court could have reasonably determined that
because the counter blocks the camera's visibility of the floor where Clark fell, the
camera would not have captured the liquid falling on the floor. Although the tape is
relevant, the trial court could have reasonably determined it had limited value in the
case because the tape is unclear, it does not show any liquid on the part of the floor
that can be seen on the tape, and due to the angle of the camera and the height of the
counter, it does not show the part of the floor where Clark fell. 

 As noted above, the primary significance of this tape is that it would show
whether another person at this location slipped prior to Clark at the same location. 
But nothing in our record suggests that another person slipped there before Clark. 
The pharmacist, the other people working at the pharmacy counter, and the store
manager do not mention any other complaints about people slipping there. The trial
court could reasonably have determined that the tape would not show anyone else
slipping at the location before Clark because the other evidence in the case fails to
suggest that occurred.

 b. Availability of Other Evidence

 As Randalls points out, there was evidence other than the tape to show the
condition of the floor. The pharmacist and Clark could each testify about the
condition of the floor when Clark fell. The store manager described the walk-through
procedures to check the condition of the floor in the hour preceding the fall. Even if
the tape had been produced and the walk through was not visible on the tape, the walk
though could have been conducted outside of camera range, given that the stationary
camera captured only a limited range. As noted above, the primary significance of
this tape is that it would show whether another person at this location slipped prior
to Clark at the same location, but the tape is not the only evidence that would show
that, and the people working in that area did not mention any complaints about people
slipping there. The trial court, therefore, could have reasonably determined the
unavailable footage was cumulative of other competent evidence that Clark could use
in place of the destroyed evidence. See Trevino, 969 S.W.2d at 958 (Baker, J.,
concurring). 


 The trial court could have reasonably determined Randalls was not negligent
in its failure to preserve more of the tape of the events preceding the fall. 
Importantly, Clark never asked Randalls to preserve the tape until after the tapes had
been destroyed pursuant to Randalls policy. Randalls, sua sponte, preserved the tape
in the anticipation of litigation by Clark. Randalls had to independently surmise how
much of the footage Clark would want, without the benefit of any instructions or
request from Clark. 

 We conclude that based on the arguments and evidence presented, the trial
court could have reasonably determined the videotaped footage would not show
whether liquid was on the floor, how long it was on the floor, whether the walk
through was done, and when it was done. Based on the arguments and evidence
presented in this case, we hold the trial court did not abuse its discretion by finding
no prejudice resulted from Randalls's failure to preserve the footage of events
preceding the fall. See, e.g., Ordonez v. M.W. McCurdy & Co., 984 S.W.2d 264, 274
n.13 (Tex. App.--Houston [1st Dist.] 1998, no pet.) (discretion not abused in denying
spoliation instruction where evidence showed log books were disposed of pursuant
to company policy and missing data not shown to be harmful).

 We hold the trial court did not abuse its discretion in refusing to grant a
spoliation finding. Because the challenge to the spoliation finding is the sole ground
presented in this appeal to challenge the summary judgment ruling, we affirm the trial
court's take-nothing summary judgment. See Adobe Land Corp., 236 S.W.3d at 357
(citing Aguirre, 2 S.W.3d at 457); Sowell, 263 S.W.3d at 38.

 We overrule Clark's sole issue.


Conclusion

 We affirm the judgment of the trial court.



 

 Elsa Alcala

 Justice


Panel consists of Chief Justice Radack, and Justices Alcala and Higley. 


1. Appellee's counsel informed the court that appellee's proper name is Randalls Food &
Drug, L.P., not Randalls Food.
2. See Tex. R. Civ. P. 166a(c), 166a(i).