# NO. 12-10-00162-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *GERALD TREMAINE MCWILLIAMS,* §<br>*APPELLANT* | | *APPEAL FROM THE 411TH* |
| *V.* § | | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* § | | *TRINITY COUNTY, TEXAS* |

*MEMORANDUM OPINION*

Gerald Tremaine McWilliams appeals his jury conviction for unlawful possession of a firearm by a felon. In five issues, Appellant contends that the trial court improperly denied his motion to suppress, the trial court erred when it omitted allegedly relevant jury instructions, and that the evidence was legally insufficient to support his conviction. We affirm.

## BACKGROUND

The record before us shows that Appellant had been convicted of robbery on January 30, 1998, and was imprisoned until December 14, 2005, when he was released. As a convicted felon, he could not possess a firearm for five years following the date of his release.[1]

The evidence at trial showed that on June 9, 2009, Appellant was arrested by law enforcement in Trinity County based upon a warrant issued by the State's parole board stating that he had violated the terms of his release. Trinity County law enforcement had been monitoring Appellant for the previous six months based upon complaints by neighbors and

---

[1] TEX. PENAL CODE ANN. § 46.04(a)(1) (Vernon 2011).

others of his involvement with trafficking in illegal narcotics at the home of Deanna McDonald. At the time of his arrest, about a mile from McDonald's leased home, he had been following her in a separate vehicle. McDonald continued on to her home after Appellant had been stopped.

While the arrest of Appellant was proceeding, McDonald retrieved items from her home and took them to a dumpster in the subdivision, about two hundred yards away from her home. Officers made contact with McDonald and drove her back to her home. There, they asked her if they could search the home and she gave permission. In the search of her home and in the bedroom that she shared with McWilliams, the officers found a Mossberg shotgun in the corner of the room on the side of the bed where McWilliams slept. They also found a .380 Hi-Point pistol under the mattress. McDonald expressed surprise at the discovery of these two firearms and uttered an expletive when the officers told her about finding them. She explained that she was a felon on parole and that this discovery could send her back to the penitentiary. She did explain to the officers that these were not her weapons and that they belonged to McWilliams. McDonald was then taken into custody by the officers, but the record before us does not show whether she was actually charged with violation of her parole.

Appellant was indicted, and a jury convicted him of the unlawful possession of a firearm by a felon before the fifth anniversary of his release from confinement. He was sentenced to ten years of imprisonment, and this appeal followed.

## MOTION TO SUPPRESS

In his first issue, Appellant contends that the trial court erred in failing to grant his motion to suppress the warrantless search of the McDonald home. Appellant contends that McDonald did not voluntarily give her consent to allow her residence to be searched.

### Standard of Review

In reviewing a motion to suppress, we view all of the evidence in the light most favorable to the trial court's ruling. *State v. Johnston*, 336 S.W3d 649, 657 (Tex. Crim. App. 2011). We apply a bifurcated standard of review in which we review de novo a trial court's application of law to the facts, but we will defer to the trial court on determinations of credibility and historical fact. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010).

Because issues of consent are necessarily fact intensive, a trial court's finding of voluntariness must be accepted on appeal unless it is clearly erroneous. *Meekins v. State*, 340

S.W.3d 454, 460 (Tex. Crim. App. 2011). Likewise, a finding of voluntariness is afforded the same great deference, because "the party that prevailed in the trial court is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *Id*. (quoting *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007)). When there are no written findings explaining the factual basis for the trial court's decision, we imply findings of fact that support his ruling so long as the evidence supports those implied findings. *Id*.

## Applicable Law

It is well settled under the Fourth and Fourteenth Amendments of the United States Constitution that a search conducted without a warrant issued upon probable cause is "per se unreasonable . . . subject to only a few specifically established and well lineated exceptions." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043, 36 L. Ed. 2d 854 (1973). It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. *Id*. The validity of consent to search is a question of fact to be determined from all of the circumstances. *Meekins*, 340 S.W.3d at 458. The Fourth and Fourteenth Amendments require that consent not be coerced by explicit or implicit means, or by implied threat or covert force, and voluntariness of a person's consent is also a question of fact. *Id*. at 458-59. The trial court must conduct a careful sifting and balancing of the unique facts and circumstances of each case in deciding whether a particular consent search was voluntary or coerced. *Id*. at 459; *see also Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010) ("The validity of an alleged consent to search is a question of fact to be determined from the totality of the circumstances").

By looking at the circumstances leading up to the search, the reaction of the consenting person to pressure, and any other factor deemed relevant, a trial court can determine whether the statement of consent was given voluntarily. *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). Factors that can be taken into consideration are the consenting person's youth, education, and intelligence; the constitutional advice given to the person; the length of the detention; and the repetitiveness of the questioning. *Id*. Additional factors the court should consider in determining whether consent to search was free from coercion include any use of physical mistreatment, violence, threats, threats of violence, promises or inducements, deception or trickery, and the physical condition and capacity of the person consenting to the search within

3

the totality of the circumstances. *Meekins*, 340 S.W.3d at 460 n.26. Under Texas law, the state must prove voluntary consent by clear and convincing evidence. *Valtierra*, 310 S.W.3d at 448.

**Discussion**

The primary investigating officer on the scene, Woody Wallace, Precinct One Constable of Trinity County, Texas, testified that McDonald's house had been under surveillance for at least six months due to the complaints of neighbors and others that narcotics trafficking was occurring at the home. He testified that he and other officers investigating at the home knew McDonald. He testified that he asked McDonald for permission to search her house and that she gave verbal consent more than once. He also testified that she opened the door and let the officers into the house, and that she sat on the porch during the search.

Constable Wallace testified that other officers initially made contact with McDonald at the housing subdivision's dumpster site, which was located about two hundred yards away from her home. Constable Wallace and the other officers testified that McDonald had been placed in the back of a law enforcement patrol car in order to transport her from the dumpster to her home where she gave consent to have it searched.

Paul Shipper, narcotics investigator with the Trinity County Sheriff's Department, testified that when he arrived on the scene, McDonald was in the back seat of a patrol car. He testified that when Constable Wallace asked her for permission to search the home, her response was "yes, you can search it." He said that he himself asked her in order to reconfirm that they had permission to enter her home, and she told him "yes, sir." On cross examination, Shipper was asked if McDonald was in handcuffs when they first saw her in the back of the patrol car. He answered that he could not recall whether she had been or not.

W.R. Hope, a precinct one deputy constable in Trinity County, testified that he was there when Constable Wallace asked McDonald for permission to search the home. He said that she had given her permission while she stood next to her home. He specifically was asked if she was in handcuffs before she gave her consent to have her home searched, and he said that she was not. Constable Wallace had been asked if McDonald had been handcuffed. His testimony was that she was handcuffed only after she was placed under arrest when the guns were actually found in her home.

The trial court's task is to determine precisely what was said and then what was conveyed by the totality of the circumstances. *Meekins*, 340 S.W.3d at 462. Appellant contends that the

evidence showed McDonald had been handcuffed as she was driven in the patrol car from the dumpster to her home. He contends this shows her consent to allow her home to be searched was not voluntary. *See Flores v. State*, 172 S.W.3d 742, 750-52 (Tex. App–Houston [14th Dist.] 2005, no pet.).

However, a review of the testimony from the suppression hearing contradicts Appellant's contention. Counsel did not specifically ask Constable Wallace whether Appellant had been handcuffed while she was in the patrol car. Rather, Constable Wallace stated only that McDonald had been handcuffed after her arrest following the discovery of firearms in her home. Investigator Shipper testified that he could not remember whether she was handcuffed in the patrol car on the way from the dumpster to her home. Deputy Constable Hope specifically testified that she had not been handcuffed while she was being driven back from the dumpster to her home. No evidence before the trial court established that she was handcuffed prior to giving permission for the officers to search her home. The evidence in this record is therefore distinguishable from *Flores*. *See id*.

Further, we note that more than one time, McDonald verbally agreed to allow her home to be searched. She opened the door to let the officers into her home. The testimony from the officers indicated that McDonald was shocked and uttered an expletive when the officers told her they had found guns in her bedroom. In viewing all the evidence within the totality of the circumstances and in the light most favorable to the trial court's ruling, we cannot conclude that the trial court abused its discretion in finding that McDonald voluntarily consented to the search of her home.

Appellant's first issue is overruled.

## ARTICLE 38.23(a) INSTRUCTION

In his second issue, Appellant contends that the trial court erred in denying his request to submit a jury instruction under Article 38.23(a) of the Texas Code of Criminal Procedure regarding whether McDonald's consent was voluntary. Appellant contends that the issue was raised during the guilt/innocence portion of his trial and therefore was a fact issue that should have been submitted to the jury.

**Standard of Review and Applicable Law**

Article 38.23(a) provides as follows:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005). An Article 38.23(a) jury instruction must be given in any case in which the defense raises a factual dispute about the legality of how the evidence was obtained. *Pickens v. State*, 165 S.W.3d 675, 680 (Tex. Crim. App. 2005).

However, a defendant's right to the submission of a jury instruction under Article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible. *Madden v. State*, 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005). There must be a genuine dispute concerning a material fact. *Madden*, 242 S.W.3d at 510. If there is no disputed factual issue, the legality of the conduct is determined by the trial court alone, as a question of law. *Id*.

## Discussion

Appellant contends that during the guilt/innocence phase of the trial, McDonald raised the issue of whether she had been asked by the officers if they could search her home. We disagree. We have carefully reviewed the record, which reveals that McDonald was questioned at three separate times about whether she had been asked by the officers to give her consent to the search. Each time either her response was found to be nonresponsive by the court or she did not answer the question. Three law enforcement officers testified that she had given consent after being asked whether the officers could search her home. Because McDonald failed to answer the questions about whether she had been asked for her consent to have her home searched, there was no evidence before the trial court that would make this a fact issue. Consequently, the trial court was not required to submit a jury instruction on voluntary consent. *See id.*

Appellant's second issue is overruled.

### ACCOMPLICE WITNESS INSTRUCTION

In his third issue, Appellant contends that the trial court should have submitted an

instruction to the jury regarding accomplice witness testimony.

**Standard of Review**

We review the trial court's decision to deny a request for an accomplice witness instruction under an abuse of discretion standard. *See Paredes v. State*, 129 S.W.3d 530, 538 (Tex. Crim. App. 2004). A trial court abuses its discretion when its ruling is outside the zone of reasonable disagreement. *Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009) (per curiam). If the appellate court determines the trial court erred regarding the jury charge, it must then evaluate the harm caused by the error. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). If there was no objection in the trial court and the alleged error is raised for the first time on appeal, the appellant must show egregious harm to obtain relief. *Id.*

Egregious harm occurs where an error affects the very basis of a case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). This is a difficult standard to prove, and it must be determined on a case-by-case basis. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). The "actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171.

"[N]on-accomplice evidence can render harmless a failure to submit an accomplice witness instruction by fulfilling the purpose an accomplice witness instruction is designed to serve." *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002). More specifically, the court of criminal appeals explained the purpose of the rule in its relation to the relevant harm analysis as follows:

> The instruction does not say that the jury should be skeptical of accomplice witness testimony. Nor does it provide for the jury to give less weight to such testimony than to other evidence. The instruction merely informs the jury that it cannot use the accomplice witness testimony unless there is also some non-accomplice evidence connecting the defendant to the offense. Once it is determined that such non-accomplice evidence exists, the purpose of the instruction is fulfilled, and the instruction plays no further role in the factfinder's decision-making. Therefore, non-accomplice evidence can render harmless a failure to submit an accomplice witness instruction by fulfilling the purpose an accomplice witness instruction is designed to serve.

*Id.* Finally, under the egregious harm standard, the omission of an accomplice witness instruction is generally harmless unless the corroborating nonaccomplice evidence is "so

7

unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Id.*

**Applicable Law**

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005). This rule, commonly known as the "accomplice witness rule," creates a statutorily imposed review that is not derived from federal or state constitutional principles defining standards for reviewing the sufficiency of the evidence. *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007).

An accomplice is someone who participates with a defendant before, during, or after the commission of the crime and acts with the required culpable mental state.[2] *Id.* Participation requires an affirmative act that promotes the commission of the offense with which the defendant is charged. *Id.* Simply having knowledge of the offense and not disclosing that information, or even trying to conceal the information, does not render a witness an accomplice. *Id.* Additionally, mere presence at a crime scene does not make an individual an accomplice. *Id.* There must be evidence sufficient to connect the alleged accomplice to the criminal offense as a "blameworthy participant." *Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006).

A trial court is not required to give an accomplice witness instruction when the evidence is clear that the witness is neither an accomplice as a matter of law nor as a matter of fact. *Id.* The evidence determines what jury instruction, if any, is needed. *Id.* "When the evidence clearly shows (i.e., there is no doubt) that a witness is an accomplice as a matter of law, the trial judge must instruct the jury accordingly." *See Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim.

---

[2] Section 7.02(a) of the Texas Penal Code provides further clarification regarding one's criminal responsibility for the conduct of another.

> (a) A person is criminally responsible for an offense committed by the conduct of another if:
>> (1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;
>> (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or
>> (3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.

TEX. PENAL CODE ANN. § 7.02(a) (Vernon 2011).

8

App. 2011). "A witness who is indicted for the same offense or a lesser-included offense as the accused is an accomplice as a matter of law." *Id.* "But if the State dismisses the indictment before the witness testifies, the witness is no longer deemed an accomplice as a matter of law." *Id.* On the other hand, if "the parties present conflicting or unclear evidence as to whether a witness is an accomplice," the jury must first determine whether the witness is an accomplice as a matter of fact under instructions defining the term "accomplice." *Paredes*, 129 S.W.3d at 536.

## Discussion

At the time of Appellant's arrest, McDonald was also arrested for possession of the firearm discovered in the bedroom. However, the record does not show whether McDonald was charged with the offense. Rather, it suggests that McDonald was not charged or indicted for the offense or any lesser-included offense. Without specific evidence in the record, Appellant failed to show that McDonald was an accomplice as a matter of law. *See Smith*, 332 S.W.3d at 439. Based on our review of the record, Appellant has only shown that McDonald, who may or may not have been a convicted felon,[3] was present during the commission of the offense, and perhaps that she helped conceal information that connected Appellant to the firearms.

Even if we were to assume that the evidence raised a fact issue as to whether McDonald was Appellant's accomplice, Appellant cannot prevail. Because Appellant did not object to the omission of the accomplice instruction at trial, he must show on appeal that he was egregiously harmed by the omission. *See Herron*, 86 S.W.3d at 632. Constable Wallace testified that the surveillance of Appellant over the past six months established that Appellant lived with McDonald in the home. He further testified that McDonald's landlord confirmed that Appellant was living in the home. Brandon Bhattaharjee, a deputy with the Trinity County Sheriff's Department, testified that Appellant's identification card was found in one of the bedroom's dresser drawers. He also identified numerous articles of clothing in the room belonging to Appellant. He testified Appellant had been wearing some of the clothing during a recent incident in which he had fled from a City of Trinity police officer and a Trinity County deputy constable. The firearms were located in the bedroom where McDonald and Appellant slept. In fact, Deputy Bhattaharjee testified that the .380 Hi-Point pistol was found under the mattress of the bed where

---

[3] Constable Wallace testified that McDonald stated she was a felon and could not possess a firearm. But it was not specifically shown that McDonald was a person that could violate the criminal statute, and she never admitted during the trial that she was a convicted felon unable to possess a firearm.

Appellant and McDonald slept, and that the Mossberg shotgun was located in plain view in the corner of the room by a nightstand near the bed. This nonaccomplice testimony corroborates McDonald's testimony that Appellant possessed the firearms. Under the record before us, we cannot conclude that the corroborating nonaccomplice evidence is "so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *See id.* Therefore, even if we were to assume that the evidence raised a fact issue as to whether McDonald was Appellant's accomplice, the nonaccomplice testimony renders harmless the omission of the accomplice witness instruction. *See id*.

Appellant's third issue is overruled.

## SUFFICIENCY OF THE EVIDENCE

In his fourth issue, Appellant contends that the evidence was not legally sufficient to sustain his conviction.[4] In his fifth issue, Appellant contends that the trial court erred in denying his motion for a directed verdict. A challenge to the trial court's ruling on a motion for directed verdict is, in actuality, a challenge to the legal sufficiency of the evidence to support the conviction. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990). Therefore, we will consider Appellant's fourth and fifth issues together.

### Standard of Review

In reviewing the sufficiency of the evidence to support a conviction, we consider all of the record evidence in the light most favorable to the verdict, and determine whether, based on that evidence, any rational trier of fact could have found the defendant guilty of all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009). This familiar standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Every fact does not need to point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper v.*

---

[4] Also in his fourth issue, Appellant claims the evidence was factually insufficient to support the trial court's judgment. We no longer review the factual sufficiency of the evidence. *See Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010).

10

***State***, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing guilt and may alone be sufficient to establish guilt. ***Id.*** The standard of review on appeal is the same for both direct and circumstantial evidence cases. ***Kuciemba v. State***, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010).

## Applicable Law

To establish unlawful possession of a firearm by a felon, the state must show the accused was previously convicted of a felony offense and possessed a firearm after the conviction and before the fifth anniversary of his release from confinement or from supervision under community supervision, parole, or mandatory supervision, whichever is later. TEX. PENAL CODE ANN. § 46.04(a)(1) (Vernon 2011). As to the element of possession, the State must show the accused knew of the firearm's existence and that he exercised actual care, custody, or management over it. ***Grantham v. State***, 116 S.W.3d 136, 143 (Tex. App.–Tyler 2003, pet. ref'd). The evidence to satisfy these elements may be direct or circumstantial. ***Id***. When the firearm is not found on the accused person or is not in the exclusive possession of the accused, additional facts must link the accused to the contraband. ***Id***. The purpose of linking the accused to the firearm is to protect innocent bystanders from conviction based solely on their fortuitous proximity to the firearm. ***Smith v. State***, 176 S.W.3d 907, 916 (Tex. App.–Dallas 2005, pet. ref'd) (citing ***Poindexter v. State***, 153 S.W.3d 402, 406 (Tex.Crim.App.2005)). However, the state need not necessarily prove the defendant had exclusive possession of the firearms; joint possession can be sufficient to sustain a conviction. ***Id.***

In determining whether sufficient links exist, we examine factors such as whether (1) the firearm was in plain view, (2) the defendant owned the residence where the firearm was found, (3) he was in close proximity to the firearm and had ready access to it or whether it was found on his person, (4) he attempted to flee, (5) his conduct indicated a consciousness of guilt, (6) he had a special connection to the firearm, (7) the firearm was found in an enclosed space, and (8) he made incriminating statements. ***Id.*** It is the "logical force" of the factors, not the number of factors present, that determines whether the elements of the offense have been established. ***Id.***

## Discussion

Here, McDonald testified she was Appellant's common law wife and they lived together in her house. She also testified that the two guns belonged to Appellant. Appellant, however, contends that McDonald's testimony cannot be considered because she was a codefendant, and

11

was therefore an accomplice to his crime. But the record in the instant case does not reveal that McDonald was Appellant's codefendant.

Even if it was shown that McDonald was an accomplice, as we have already discussed, the nonaccomplice testimony corroborates McDonald's testimony and independently presents legally sufficient evidence that Appellant possessed the firearms. The evidence demonstrates that Appellant and McDonald lived at the residence. Joint possession of the firearms is legally sufficient evidence to sustain a conviction. *See Smith*, 176 S.W.3d at 916. The logical force of the nonaccomplice evidence links Appellant to actual possession of the firearms. Constable Wallace testified that his agency and other local law enforcement agencies conducted surveillance of Appellant over the past six months and that Appellant lived in the home. He further testified that the landlord confirmed that Appellant lived at the residence. Deputy Bhattaharjee testified that Appellant's identification card was found in the room where the guns were located, as well as articles of clothing belonging to Appellant. Deputy Bhattaharjee knew Appellant from prior interactions with police. He testified that the handgun was found under the mattress where the Appellant and McDonald slept, and that the shotgun was located in plain view near the bed. In conducting their search, the officers also discovered scales used in drug trafficking with trace amounts of cocaine, as well as small trace amounts of marijuana.

Based on this evidence, viewed in the light most favorable to the verdict, a rational jury could have concluded that Appellant, a convicted felon, voluntarily maintained actual possession, custody, or management over the firearms in violation of Section 46.04(a)(1) of the Texas Penal Code. Consequently, we hold the State presented legally sufficient evidence to link Appellant to the two firearms.

Appellant's fourth and fifth issues are overruled.

## DISPOSITION

Having overruled Appellant's five issues, the judgment of the trial court is *affirmed*.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered August 10, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*
(DO NOT PUBLISH)

12